## CLAY WHITTLE V. THE STATE.

No. 22785. Delivered March 22, 1944.
Rehearing Denied April 26, 1944.

228

The opinion states the case.

*Nat Patton, Jr.,* and *J. F. Mangum,* both of Crockett, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the murder of T. E. Kelley in Houston County on August 2, 1943. Upon his trial he was given the death penalty, and he now appeals.

Both the appellant and the deceased were convicts, confined at the State's Eastham Farm in Houston County, and practically all the witnesses were also convicts. It was alleged in the indictment, and proven, that prior to the date alleged as the commission of this offense appellant had been previously convicted of crimes that carried as a punishment the alternate punishment of death,—that is, that appellant had been convicted in Ector County, Texas, on the 28th day of March, 1940, of an offense to which the penalty of death was and is affixed as an alternate punishment, to-wit, the offense of robbery; and again it was alleged that appellant had been convicted on the 9th day of March, 1940, in Midland County, Texas, of a similar offense, and carrying a similar alternate penalty; and again it was alleged that appellant had been convicted on the 9th day of March, 1940, in Midland County, Texas, of a similar offense, and carrying a similar alternate penalty; and again it was further alleged that on the 5th day of March, 1940, in Winkler County, Texas, appellant had been convicted of a similar offense, to which there was affixed a similar alternate penalty.

Art. 64, Penal Code, provides as follows:

"A person convicted a second time of any offense to which the penalty of death is affixed as an alternate punishment shall not receive on such second conviction a less punishment than imprisonment for life in the penitentiary."

By virtue of this statute the trial court instructed the jury, that in the event they found the appellant guilty, and that he had been previously convicted of an offense that carried the alternate punishment of death, then they should assess the punishment herein at death or confinement in the penitentiary for life.

Appellant filed a motion to quash the indictment, claiming that the pleading of the three previous convictions for robbery violated the provisions of our State Constitution, Art. 1, Section 14, wherein it prohibits any person being put twice in jeopardy of life or liberty, it being contended that appellant was again being herein tried for the offense for which he had been theretofore convicted in Ector, Midland and Winkler Counties in the year 1940.

We have heretofore held in Kinney v. State, 45 Texas Crim. Rep. 500, 78 S. W. 225, 226, 79 S. W. 570, relative to a similar statute concerning a misdemeanor, that the enhancement of a punishment because of previous convictions of a similar offense was a constitutional statute and did not place defendant twice in jeopardy for the same offense. This Kinney case, supra, was again written upon in the motion for rehearing, 79 S. W. 570, 571, in which it was said:

"He (the accused) is not again punished for the first offense, but that is used as evidence, in the second and subsequent offenses, in order to increase his punishment. Rand v. Commonwealth, 9 Grat. (Va.) 738; People v. Stanley, 47 Cal. 113, 17 Am. Rep. 401; Ross's case, 2 Pick. 165; Blackburn v. State, 50 Ohio St. 428, 36 N. E. 18."

Again the Supreme Court, when it had jurisdiction of criminal matters, held in the case of Long v. State, 36 Tex. 6, quoting from Lord Campbell, C. J., in an English Case, that:

"A statement of a previous conviction does not charge an offense. It is only the averment of a fact which may affect the punishment. The jury do not find the person guilty of the previous offense; they only find that he was previously convicted of it, as a historical fact." Also see Williams v. State, 109 Texas Crim. Rep., 450, 5 S. W. (2d) 514.

The trial court was correct in overruling such motion.

Again appellant moved to quash the indictment because, as he alleges, the same showed upon its face that the offense charged did not come within the provisions of Art. 64, Penal Code, and therefore the allegation of three prior convictions should not be included therein.

Appellant's contention hereunder being that this is not the second conviction with death as an alternate punishment, but it is the fourth such conviction, and therefore this statute does

not apply herein. We are not in accord with such contention. We think, such statute means the second, or any subsequent conviction carrying with it the alternate punishment of death, and not merely the second conviction alone. The cumulative nature of such punishment doubtless arises because of the incorrigibility of the offender, and the inability to cause him to answer obediently to the laws, and the more reason exists for such an application of the statute to a stubborn offender, and increases with the increased number of offenses of the character set forth in the statute. To hold with appellant's contention would result in rewarding one who committed more than two such offenses for his failure to heed the admonition of the law as to repetition of offenses.

We think the phrase "second conviction" as herein used would not be rendered meaningless if there were also present a third, a fourth, or other subsequent offenses. This motion to quash was correctly overruled.

While looking over the authorities under Art. 64, P. C. supra, our attention was directed to the case of Jennings v. State, 135 Texas Crim. Rep., 670, 122 S. W. (2d) 639, in which this court erroneously quoted Art. 64, P. C., as requiring the trial judge to assess the penalty under an indictment charging the commission of an ordinary felony less than capital and a previous conviction of such a felony. This decision gave as its reason for the assessment of a life penalty Art. 64, P. C. The citation to the statute should have been Art. 62, Penal Code, which article does make the penalty in such second or subsequent conviction of a felony less than capital a fixed one as the highest affixed to the offense, which the court himself assessed upon a finding of guilt by the jury, and to the extent of the quotation of Art. 64, P. C. same should read Art. 62, P. C.

Appellant also excepted to the trial court's failure to require the State to elect upon which two counts in the indictment it relied upon. There were two counts set forth in the indictment, the first count alleging the homicide to have been committed by the use of a knife, the second count alleging the act to have been committed with some sharp instrument, the nature and description of which was unknown to the grand jurors. The trial court in his charge submitted to the jury the allegations contained in the first count alone of the indictment, that is the use of a knife, and we think such act was tantamount to an election of the use of the first count alone by the court.

In appellant's bill of exceptions No. 11 he objects to the introduction of the prior convictions in the district courts of Ector, Midland and Winkler Counties on various grounds, one of such grounds being because the allegations in the indictment sets forth the offense of which appellant had been previously convicted as that of robbery, and does not follow such offense with the phrase "with firearms," and there being two classes of robbery, one being robbery by assault, with no alternative punishment of death, and robbery with firearms, bearing the alternate punishment of death, it is appellant's claim that not only should such portion of the indictment be quashed, but also that such prior convictions are not admissible for the purpose of determining the punishment, and same is a variance between the allegation and the proof. We are not without a precedent in the matters upon which this complaint is based. In the case of Palmer v. State, 128 Texas Crim. Rep., 293, 81 S. W. (2d) 76, 78, the accused was charged with the murder of Major Crowson, a guard on this same Eastham farm. The indictment therein was the subject of attack on the same grounds as the present attack on the indictment in this case. The Palmer indictment is set forth in the opinion, and we find it to be in full accord with the present indictment herein. In the portion of the indictment relative to the punishment in the case at bar it is alleged "that the said Clay Whittle was duly and legally convicted in said last-named court of an offense of which the penalty of death was and is affixed as an alternate punishment, to-wit, the offense of robbery," etc. The corresponding paragraph in the Palmer case, supra, reads that "the said Joe Palmer was duly and legally convicted in said last named court of an offense to which the penalty of death was and is affixed as an alternate punishment, to-wit, the offense of Robbery," etc.

We said in the Palmer case, supra:

"The allegation in the present indictment that the prior conviction was for robbery, an offense to which the alternate penalty of death is affixed, in our opinion is equivalent to an allegation that the robbery was perpetrated by the use of firearms or other deadly weapons."

The pleader in this cause doubtless followed the Palmer case, supra, and we think the indictment gave appellant notice that his previous convictions were for robbery with firearms, and carried the alternate penalty of death. We see no error thus presented.

There is found in the record many objections to the testimony of certain convict witnesses, supposedly taken down by the witness Springfield, who was a shorthand writer, an official working for the prison manager, in which the witness had participated in an investigation of this homicide soon after the death of the deceased, the burden of the exceptions being objections as to what certain defense witnesses had said in such investigation, after predicates had been laid for their impeachment on such matters. The main objection seemed to be based upon the fact that such witnesses were in custody of the prison authorities at the time they made such statements to Mr. Springfield. These bills are not complete in that they do not show what the statements of the witnesses were.

Prior to 1925 a convict could not testify except for the defendant by deposition in a criminal case. In that year the legislature saw fit to amend Art. 708, C. C. P. to the extent of allowing any convict to testify as to any transaction occurring in any jail or any prison farm, etc., thus placing a convict who is offered as a witness in a matter occurring on a prison farm in the same category as any other proffered witness. We see no error in such proceedings as are complained of herein.

We have considered all bills of exception in the record, some of them not having been written upon, and are of the opinion that they are without merit.

The facts established by the State show that appellant, a convict with sentences of 130 years in the penitentiary for robberies with firearms, was a cook on the Eastham State prison farm, and had some kind of disagreement with T. E. Kelley, the deceased. At the noon hour on the day of the homicide the prisoners, probably some 150 or 200 in number, came into the main building on such farm, and from thence to the dining hall for their noon meal. On that day they had finished their meal and returned to their dormitory in such building, and were allowed to rest until 1:30 P. M. There is testimony in the record that during such resting period appellant exhibited a knife to one of the convict long-term inmates, and referring to the deceased said: "That s - o - b will be lucky if he gets out of here this noon—this day at noon—he was talking about Kelley * * * I would say the blade was a foot long * * * it was sharp on both sides, looked like it had just been sharpened." Appellant walked around the building during the rest period with the knife in his bosom. When the work squads were called to go to work the deceased was in the first squad called, and it became his duty to

go to the door of the building and be counted as he went out to work. The State's testimony shows that appellant, the cook, did not have to go outside with the work squads, but while the squad was crowding up to the door to be counted out he slipped up to where the deceased stood and put a knife against Kelley's side and "shoved it in one time and pulled it out," and appellant then walked away and dropped the knife. Kelley immediately began bleeding and trying to get out of the door, which he soon did, and was unable to talk, but soon fell and died. The prison physician examined the body of Mr. Kelley and found a stab wound on the left side, a little to the back, about one and one-half inch external wound, as though made with a knife, which went into the body below the last rib; this wound with a knife blade eight or nine inches long could have reached the spleen, the aorta and the liver, and in the doctor's opinion this stab would have produced Kelley's death from a hemorrhage. The State showed also that after Kelley's death appellant asked one of the men who had carried the deceased to the infirmary: "Did that s - o - b say anything before he died?" A knife was also found hidden in a cabinet in the kitchen on which there was found human blood.

The appellant placed upon the stand some nine witnesses, as well as himself, who each testified to some facts believed to be material in establishing an alibi for himself, evidencing his presence at a different place from where the assault was committed upon Kelley. It was his contention that he was not present in the dining room during the meal, he being a cook, but that he was in the dormitory portion of the building lying down on a bunk during the whole time; that he only arose from such bunk after Kelley had been struck and the call came to count the prisoners left in the building after the work squads had departed. He entered a denial to the assault, to any trouble between himself and Kelley, and to any inquiry relative to what Kelley said. The court submitted his defense of an alibi, which instruction seemed satisfactory to appellant's attorneys, who were appointed by the court to conduct his defense, and who are worthy of commendation for their diligence and efforts in his behalf.

It is true that all the witnesses to the facts at the prison were convicts, many with terms reaching beyond the span of their lives, and the State's witnesses, as well as appellant's, appeared before the jury under that handicap in so far as their credibility is concerned. Nevertheless the legislature saw the necessity of allowing such matters as are here present to be investigated as is evidenced by their 1925 amendment to Art. 708, C. C. P., and it finally becomes the duty of a jury to find the true facts amidst the contradictory facts as herein shown.

The jury accepted the version of the State's witnesses, and exercised their discretion in assessing the penalty of death, which they had the power to do, and we see no reason to say they were not justified in so doing.

Finding no error in the record, the judgment is affirmed.

ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant's motion for rehearing is based principally upon an issue not fully developed in the original brief. He had been convicted in 1940 for four offenses, three of which carried the death penalty as an alternate punishment. It is not alleged in the indictment in the instant case that the second or succeeding convictions were for offenses committed subsequent to the conviction next preceding it. From the record it appears that such allegation would not have been sustained by the evidence even if made. It may be conceded then that evidence of only one of these convictions was properly admitted as evidence in the instant case as the record appears to be. This, however, is sufficient to admit the evidence complained of. See Art. 64, Vernon's Ann. P. C. and annotations thereunder. The chief contention made in the motion for rehearing is based upon a record, which, though not discussed in the opinion, was fully considered before the original opinion was approved.

It is further observed that when the State closed its case, the appellant took the stand in his own behalf and testified on direct examination as follows:

"I have been convicted prior to this time. I have been convicted four (4) times. And this time is pratically one time—it was all right at the same time; there were three (3) cases, and all in March of 1940. And my time, now, is one hundred (100) years."

The foregoing testimony is a little ambiguous and on cross examination the State was properly permitted to examine further into it and develop the fact that in addition to the four sentences appellant was then serving, he had previously served four sentences for felonies in the State of Oklahoma. Such four sentences are the ones referred to when the witness said: "I have been convicted prior to this time. I have been convicted four (4) times." We quote from the statement of facts the evidence of appellant on cross examination on the subject as follows:

"I am doing time, at the present time, on four (4) convictions. Three (3) of them are for robbery with firearms, and one of them is for robbery by assault. Now, previous to that time, I had four (4) felony convictions, in the State of Oklahoma. One of those was for robbery with firearms; two (2) of them were for forgery, and one for burglary. Altogether I have had eight (8) felony convictions."

It is our conclusion that no error can be based on the admission of evidence under the indictment as to the convictions alleged in view of appellant's own testimony voluntarily given, which goes much further than that developed by the State in chief based on the allegations in the indictment of former convictions. He voluntarily brought into the record evidence of his four Oklahoma convictions and did it in such a way that the trial court was justified in overruling his objections to cross examination on the subject which fully developed the facts he had indefinitely related. Furthermore, it appears from the record that this evidence was properly admitted as throwing light on his credibility as a witness. The convictions were in about the year 1929 and there is nothing to show that he had been out of the penitentiary a sufficient length of time or that his demeanor had been such as to bar the evidence of these convictions for impeaching purposes.

It is our view that the foregoing conclusion precludes the necessity for further discussion of the motion. The motion for rehearing is overruled.