**Joe Willie PRESCOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1159–85.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 27, 1988.

---

Craig A. Washington, Houston, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall and Mary Thornton Taylor, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

Appellant was found guilty by a jury of murder. *Tex.Penal Code Ann.* § 19.02

(Vernon 1974). Punishment was thereafter assessed by the jury at thirty-five years in the Texas Department of Corrections. The appellant's conviction was affirmed by the Court of Appeals for the Second Judicial District in a published opinion. *Prescott v. State,* 696 S.W.2d 693 (Tex.App.—Fort Worth 1985, pet. granted) (Opinion on State's Motion for Rehearing). We granted appellant's petition for discretionary review in order to consider whether the Court of Appeals erred in finding that the trial court correctly overruled the appellant's objection to the state eliciting testimony regarding a prior extraneous offense.[1]

The appellant testified at trial as to his recollection of the events surrounding the shooting of the decedent. In cross-examining the appellant the State inquired as to the relationship between the appellant and two individuals who had previously executed affidavits supporting the appellant's version of events. Although one of these men testified at the trial, the other could not be located by the time the trial began. The State sought to determine how the defense learned of the identity of the two witnesses and the procedures surrounding the completion of the affidavits. Both of the affidavits were completed on the same day, in defense counsel's office and notarized by defense counsel's secretary.

On redirect, defense counsel sought to clarify the appellant's relationship with the two eyewitnesses and the procedures used to complete the affidavits. After indicating that he did not personally know the eyewitness who did not testify or his whereabouts, the following transpired:

Q. [By defense counsel]: And if Daniel Punch or Willie Robinson [affiants] knew you before this thing happened, does that mean you knew them, too?

A. No sir. La—

Q. Pardon me?

A. I was just fixing to say lots of people come up to me, speak to me. I don't know them. Some people I might know; they don't know me.

1. Review was granted pursuant to Rule 200(c)(2) and (3), *Tex.R.App.Pro.*

Q. Now, did you have any control over what day that I decided to work on your case in 1981?

A. Did I have any control over what day?

Q. When I decided to take a statement or do anything in your case?

A. No, sir, I had no control over that. Excuse me. Are you asking me when you decided to take a statement from the witness—

Q. Yeah. Did you have any control over what day I decided to do that?

A. No, sir.

Q. When I scheduled it?

A. No, sir.

Q. Did you—do you find anything unusual that the lawyer decided to work on your case took two statements one day?

A. Well, I'm—*this is my first time of going through this*. Hopefully my last. In other words, I don't—I'm not sure about the legal lawyer (pause) whatever.

Q. Okay.

A. *Procedures.* (emphasis added).

On recross, the State sought to determine what the appellant meant during the emphasized portion of the above colloquy:

Q. Now, you said this is the first time that you have ever been—you have ever gone through this?

A. This is the first time I was ever involved in this incident.

Q. No. Just a few minutes ago you told the jury—we're talking about all these procedures and such.

MR. BEECH: Your Honor, I think a question may be arising we need to retire the jury.

A hearing was then held outside the presence of the jury during which defense counsel took the appellant on voir dire to try and clarify the appellant's equivocal response.

Q. Mr. Prescott, did you hear the question that I had posed to you earlier? Do you want me to read it again to you?

A. Read it again to me, please.

Q. Do you find anything unusual that your lawyer decided to work on your case, took two statements one day?

Answer: Well, I'm—this is my first time of going through this, hopefully my last. In other words, I don't—I'm not sure about the legal lawyer, whatever.

Now, what did you mean by your answer?

A. What I meant was this is—this is the first time that I have been questioned about two witnesses signing statements the same day.

Q. Okay, and likewise, is this the first time you have ever been asked anything about what control you had over the lawyer and what the lawyer does in your case?

A. Yes, this is the first time I have been asked that, also.

Q. Are you trying to imply you have never had a lawyer, never had a case before by that?

A. No, I'm not implying that.

Notwithstanding the appellant's explanation, the trial court overruled the appellant's objection and allowed the State to ask the appellant whether he had stood trial one year before in the very same courtroom for a felony offense. The appellant testified that this was indeed true.

■ It is well settled that "an accused puts his character for veracity (as opposed to his moral character) in issue by merely taking the stand, and thus he may be impeached in the same manner as any other witness." *Hammett v. State*, 713 S.W.2d 102, 105 (Tex.Cr.App.1986). As with any other witness, an accused cannot be impeached by a prior offense with which he has been charged unless the charges resulted in a final conviction for either a felony offense or an offense involving moral turpitude, neither of which is too remote. *Ochoa v. State*, 481 S.W.2d 847, 850 (Tex. Cr.App.1972). *See also,* Article 38.29, V.A.

C.C.P. (repealed eff. Sept. 1, 1986)[2] An exception to this general rule arises when a witness, during direct examination, leaves a false impression as to the extent of either his prior (1) arrests (2) convictions[3] (3) charges or (4) "trouble" with the police. *Ochoa v. State, supra.*

When the accused leaves such a false impression during his direct examination, he is commonly said to have "opened the door" to an inquiry by the State as to the validity of his testimony. Accordingly, the State is allowed, during cross-examination, to do what it could not otherwise do. That is, dispel the false impression left by the accused as to his past, a subject which is usually an irrelevant issue, collateral to the case, and thus inadmissible. *Hammett v. State, supra; Murphy v. State*, 587 S.W.2d 718 (Tex.Cr.App.1979).

■ The issue in this case is whether the accused's testimony on redirect examination "opened the door" and authorized his subsequent impeachment by the State through the use of a prior felony conviction which had not yet become final. The Court of Appeals gave great deference to the trial court which "heard Prescott's statement," "heard his explanation" and determined that the appellant's "original remark implied that he'd never before been involved in criminal court procedures." *Prescott v. State* at 698, *supra.* First, we should note that while the trial court certainly heard the statement and explanation given, there is nothing within the record that explicitly indicates what the trial court felt the appellant's statements meant. *Prescott v. State, supra* at 698. Second, it is interesting to note that while the trial court allowed the State to question the appellant on the prior felony conviction which was not yet final, it contradictorily refused the State's request to question the appellant concerning another pending felony charge.

The appellant's response, "this is my first time of going through this. Hopefully, my last," cannot be examined in a vacuum. Yet such an analysis would completely ignore both the question which the appellant was attempting to answer and the context in which the response was given.

During cross-examination, the State made repeated efforts to discredit the affidavits obtained by defense counsel and the procedures surrounding their completion. The comment that the State contends "opened the door," occurred when defense counsel sought to show that the appellant himself had absolutely nothing to do with procuring the affidavits from the alleged eyewitness. The question was very simple, "Do you find anything unusual that the lawyer decided to work on your case took two statements one day?" Given the question and the context in which it was asked, the appellant's response, "Well, I'm—this is my first time of going through this. Hopefully my last. In other words, I don't —I'm not sure about the legal lawyer (pause) whatever," ... "procedures," is restrictive, responsive, reasonable and understandable.

The answer given here was in direct response to the question asked. When attempting to determine the meaning of a response, the predicate question is a determinative interpretive tool. The appellant's response was not a deliberate attempt by the appellant to portray himself as one ignorant of the criminal justice process. It was however, indicative of an appellant unversed in the everyday procedures of attorneys—particularly with respect to the taking of two affidavits in one day.

Arguably, the appellant's response may nonetheless be construed as ambiguous. The crux of this ambiguity revolves around the meaning to be given to the pronoun "this," as used in his response: "first time of going through *this* [emphasis added]." Assuming that an ambiguity does exist

---

**2.** The import of Art. 38.29, V.A.C.C.P. has been carried forward by Rule 609 of the Texas Rules of Criminal Evidence.

**3.** The State may refute false assertions about prior convictions despite the nature of the offense or its remoteness. *Ochoa v. State, supra; Stephens v. State,* 417 S.W.2d 286, 288 (Tex.Cr. App.1967).

(which takes an extraordinary leap of logic), this Court is unprepared to hold that the ambiguity should in every instance, inexorably be resolved against an appellant. To do so ignores the very basis for the prohibition against the introduction of prior convictions and extraneous bad acts. Such evidence "is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him." *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). Given an ambiguity, the complained of response should be narrowly construed.

The State cites *Whittle v. State*, 147 Tex. Cr.R. 227, 179 S.W.2d 569, 573 (Tex.Cr.App. 1944) (On Motion for Rehearing) for the proposition that this Court has said that an ambiguity in a defendant's statement about his prior record is itself sufficient reason to allow the State to delve into the matter on cross-examination. The holding in *Whittle* is easily distinguishable from the situation presently before us. The defendant in *Whittle* on direct examination admitted only four prior convictions. The State duly pointed out to the defendant on cross-examination that the defendant's list of prior convictions had failed to include four additional convictions. This Court's holding in *Whittle* was premised on a defendant who had intentionally misstated the extent of his prior criminal conduct, not one that he had given an ambiguous response.

The situation presented in *Whittle* is typical of the situation in which an accused is deemed to have opened the door. That is, the accused has been asked a specific question concerning the extent of his prior arrests, charges, conviction or trouble with police. Responding, the accused then completely or partially fails to properly identify the extent of his prior "troubles." *See, e.g. Thomas v. State*, 530 S.W.2d 834 (Tex.Cr. App.1975) ("I've never been in any trouble like this before."); *Nelson v. State*, 503 S.W.2d 543 (Tex.Cr.App.1974) (Incomplete response to questions, "Have you ever been in trouble before?" and "Is that all of the trouble you have been in?").[4]

The situation presented in this case is entirely different. According to the State, the appellant offered a gratuitous, self-serving and non-responsive answer to a question which had nothing to do with the extent of the appellant's prior experience with the criminal justice system. Our case law is devoid of a case standing for the proposition that a non-responsive answer alone opens the door to a full inquiry by the State of a defendant's prior experience with the criminal justice system. However, this is not to say that a non-responsive answer could never be deemed to have opened the door for such an inquiry.

As we previously stated, however, the appellant's answer was responsive. Even if that response is also somewhat ambiguous, a determination of ambiguity standing alone is insufficient to justify resolving that ambiguity against the appellant. After examining the context within which the question was asked and upon which the jury's attention was focused, the specific question asked and the entire answer given by the appellant, we hold that the appellant

---

**4.** *See also, Ex parte Carter*, 621 S.W.2d 786 (Tex. Cr.App.1981) (incomplete listing during direct examination of his prior troubles); *Bell v. State*, 620 S.W.2d 116 (Tex.Cr.App.1981) (incomplete response to question, "Have you anything in your past that is of a criminal nature?"); *Reese v. State*, 531 S.W.2d 638 (Tex.Cr.App.1976) (incomplete response to question, "What kind of trouble do you have with the law?"); *Hoffman v. State*, 514 S.W.2d 248 (Tex.Cr.App.1974) (denial of the existence of any prior complaints); *Gilmore v. State*, 493 S.W.2d 163 (Tex.Cr.App. 1973) (defendant denied involvement in any prior robbery on direct examination); *Page v. State*, 486 S.W.2d 300 (Tex.Cr.App.1972) (denial of any prior arrests for violent crimes, cross-examination as to arrest for concealed weapon, robbery, burglary and theft was therefore proper); *Hamilton v. State*, 480 S.W.2d 685 (Tex.Cr. App.1972) (denial of any prior burglaries or robberies on direct); *Alexander v. State*, 476 S.W.2d 10 (Tex.Cr.App.1972) (defendant testified on direct that "he had not been in trouble before"); *Heartfield v. State*, 470 S.W.2d 895 (Tex.Cr.App.1971) (defendant testified that since 1949 he had not been in trouble with the law); *Barnett v. State*, 445 S.W.2d 205 (Tex.Cr.App. 1969) (denial of "any trouble with the law in the past eight years."); *Orozco v. State*, 164 Tex.Cr. R. 630, 301 S.W.2d 634 (Tex.Cr.App.1957) ("Have you ever been convicted of a felony or a misdemeanor or paid a fine or anything of that nature?").

had not opened the door to impeachment by having left a false impression of his prior experience with the criminal justice system.

 After concluding that the trial court erred it remains to be determined whether the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Bell v. State*, 620 S.W.2d 116, 126 (Tex.Cr. App.1981) (Opinion on Motion for Rehearing). The appellant was on trial for the shooting death of another man which grew out of a dispute surrounding a drug transaction. Witnesses for the State and defense, including the appellant, disagreed sharply over the circumstances of the shooting. These disagreements include the manner in which the decedent approached the appellant, the intensity of the struggle preceding the discharge of the weapon, and whether the weapon was accidentally or intentionally fired. A long dissertation of the facts is, however, unnecessary. It is sufficient to observe that the circumstances surrounding the shooting were neither undisputed nor overwhelmingly adverse to the appellant.

Inasmuch as the witnesses for the State and defense were contradicting as to the facts, the veracity of each witness became a particularly significant factor. By improperly admitting the appellant's prior, non-final, felony conviction, the veracity of the appellant, who is arguably the most important witness for the defense, was cast in doubt. Further, within the context of this murder trial, the jury was then left to speculate as to the nature of the non-final felony conviction. Moreover, the limiting instruction given in the charge to the jury did not limit the use of the appellant's prior felony conviction to impeachment only.[5] Indeed, the trial court erroneously overruled just such a request by defense counsel prior to the submission of the charge.

---

5. The instruction given did not address the reason for which the complained of felony offense was admitted i.e. impeachment:

You are further instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and

Given such circumstances, there is a reasonable possibility that the evidence of which the appellant complains may have contributed to the conviction. *Templin v. State*, 711 S.W.2d 30, 34 (Tex.Cr.App.1986); *Prior v. State*, 647 S.W.2d 956, 959 (Tex. Cr.App.1983). Accordingly, the error cannot be considered harmless beyond a reasonable doubt.

We having determined that the trial court erred in permitting the introduction by the State of the appellant's non-final felony conviction and that such error was not harmless, the judgments of the Court of Appeals and the trial court are reversed and the cause is remanded to the trial court.

DAVIS and WHITE, JJ., concur.

believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may *only consider the same in determining the intent, knowledge, and identity* of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment, and for no other purpose. (Emphasis added).