Watson-R v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-056-CR

     REGINALD WATSON,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 278th District Court
Madison County, Texas
Trial Court # 9097
                                                                                                    

O P I N I O N
                                                                                                    

      Reginald Watson pled guilty to the offense of aggravated robbery during which a female store
clerk was shot. See Tex. Penal Code Ann. § 29.03 (Vernon 1994). He elected to have
punishment set by a jury, which returned a verdict of 99 years in prison. See id. § 12.32 (Vernon
1994). During the punishment hearing, Appellant testified about the robbery and concluded his
direct testimony by saying that he had never been convicted of a felony, had turned himself in after
the robbery, was sorry that it happened, understood that it was a serious offense, and had "learned
a lot." Over his objection, the State offered evidence of his being implicated in two other
robberies and an escape from jail. In a single point, Watson claims that the court erred in
admitting the evidence of other offenses of which he had not been convicted. We will affirm.
      During the punishment hearing, Watson testified in response to his counsel's questions:
      Q.  Have you even been convicted of a felony in the State of Texas?

      A.  No, sir.
 
      Q.  Have you even been convicted of a felony in any other state?

      A.  No, sir.
 
      Q.  How do you feel about what happened?
 
      A.  You know, I'm extremely sorry for what happened, you know, because I had no business
being in it and it had no business happening.
 
      Q.  Well, are you sorry about what happened or are you just sorry you got caught?
 
      A.  No, I'm sorry about what happened. I sorry about what happened because it messed up
the lady and it also messed up myself.
 
      Q.  Do you believe that you deserve probation from this jury?
 
      A.  Well, I would like probation, but, you know, I might deserve, you know, to experience
a little bit of prison time.
 
      Q.  So you're not asking this jury to give probation, then?
 
      A.  No, sir.
 
      Q.  Are you asking the jury to at least be reasonable, though, about the amount of time that
they give you?
 
      A.  Yes, sir.
 
      Q.  You think you have learned anything from this experience?
 
      A.  Yes, sir, I have learned a lot.
 
      Q.  Well, do you understand that this is just connected to more than your own life?

      A.  Yes, sir.

      Q.  How old are you again?

      A.  Nineteen years old.

      Q.  You understand this is a serious offense?

      A.  Yes, sir. It's very serious.
      On cross examination, he said that he learned that "the cliche that crime doesn't pay, it was
true" and that "you ain't going nowhere in this world without hard work and taking care of your
responsibilities." The State continued:
      Q.  You learned that the day this happened, didn't you?
 
      A.  Yes, sir. And the following days. Every following day I sit down there in that jail cell
I think about what happened and think about how it has messed up my life and how I
could be doing better than I am now.
After further examination about the details of the offense, the State inquired outside of the
presence of the jury whether Watson had been indicted for the aggravated robbery of two people
in Houston on December 6, 1992, during which he had used a gun.


 He acknowledged that he had
been so charged and further admitted that he had escaped from the Madison County jail on July
20, 1993, while being held for the offense on trial. 
      Watson objected to the evidence, saying that it was improper to impeach him because there
were no final convictions. See Tex. R. Crim. Evid. 609. The State responded by saying, "[T]he
defendant has left a false impression with the jury that he learned from this incident that crime
does not pay, [and] I should have the right to impeach him with conduct, criminal conduct
occurring after this." The court overruled Watson's objection and allowed the State to question
him about the offenses before the jury.
      The Court of Criminal Appeals summarized the rule in Prescott v. State:
It is well settled that "an accused puts his character for veracity (as opposed to his moral
character) in issue by merely taking the stand, and thus he may be impeached in the same
manner as any other witness." Hammett v. State, 713 S.W.2d 102, 105 (Tex.Cr.App.1986). 
As with any other witness, an accused cannot be impeached by a prior offense with which he
has been charged unless the charges resulted in a final conviction for either a felony offense
or an offense involving moral turpitude, neither of which is too remote. Ochoa v. State, 481
S.W.2d 847, 850 (Tex.Cr.App.1972). See also, Article 38.29, V.A.C.C.P. (repealed eff.
Sept. 1, 1986). An exception to this general rule arises when a witness, during direct
examination, leaves a false impression as to the extent of either his prior (1) arrests (2)
convictions (3) charges or (4) "trouble" with the police. Ochoa v. State, supra.
 
 When the accused leaves such a false impression during his direct examination, he is
commonly said to have "opened the door" to an inquiry by the State as to the validity of his
testimony. Accordingly, the State is allowed, during cross-examination, to do what it could
not otherwise do. That is, dispel the false impression left by the accused as to his past, a
subject which is usually an irrelevant issue, collateral to the case, and thus inadmissible. 
Hammett v. State, supra; Murphy v. State, 587 S.W.2d 718 (Tex.Cr.App.1979).
 
The issue in this case is whether the accused's testimony on redirect examination "opened
the door" and authorized his subsequent impeachment by the State through the use of a prior
felony conviction which had not yet become final. The Court of Appeals gave great deference
to the trial court which "heard Prescott's statement," "heard his explanation" and determined
that the appellant's "original remark implied that he'd never before been involved in criminal
court procedures." Prescott v. State at 698, supra. First, we should note that while the trial
court certainly heard the statement and explanation given, there is nothing within the record
that explicitly indicates what the trial court felt the appellant's statements meant. Prescott v.
State, supra at 698. Second, it is interesting to note that while the trial court allowed the State
to question the appellant on the prior felony conviction which was not yet final, it
contradictorily refused the State's request to question the appellant concerning another
pending felony charge.
 
 The appellant's response, "this is my first time of going through this. Hopefully, my last,"
cannot be examined in a vacuum. Yet such an analysis would completely ignore both the
question which the appellant was attempting to answer and the context in which the response
was given.
Prescott v. State, 744 S.W.2d 128, 130-31 (Tex. Crim. App. 1988) (footnotes omitted). The
Court determined that Prescott had not "opened the door" to cross-examination about a prior
extraneous offense. Id. at 132-33.
      The Court further explained the Prescott decision in Theus v. State, where it said:
The holding in Prescott was predicated upon the impeachment of a witness with the use
of a prior conviction which had not become final. [Prescott, 744 S.W.2d at 130.] While such
impeachment was not normally allowed, see Ochoa v. State, 481 S.W.2d 847, 850
(Tex.Cr.App.1972), in Prescott we reiterated that an exception to the general rule exists
"when a witness, during direct examination, leaves a false impression as to the extent of either
his prior (1) arrests (2) convictions (3) charges or (4) `trouble' with the police." Id. at 131. 
 The Beaumont court quoted this language from Prescott before stating that "[i]t is, therefore,
still the law, that where such a false impression as to a witness' criminal history is given to
the jury on direct examination, the opposing party is entitled to elicit testimony from the
witness which will correct the false impression." Hinojosa, 780 S.W.2d at 302.
. . . 
This language demonstrates that in order to "open the door" to the evidence of prior
crimes, the witness must do more than just imply that he abides by the law—he must in some
way convey the impression that he has never committed a crime.
In this regard, the decision in Hinojosa was correct, because the court of appeals noted
that the co-defendant had left the impression that he had never been convicted of a felony by
directly denying that he had ever been convicted. 780 S.W.2d at 302. . . . Moreover, this
Court concluded in Prescott "that the appellant had not opened the door to impeachment by
having left a false impression of his prior experience with the criminal justice system." 744
S.W.2d at 133.
Theus v. State, 845 S.W.2d 874, 878-79 (Tex. Crim. App. 1992). The Court found that, when
Theus testified that he had never sold drugs and had reported a drug dealer to police, he had not
opened the door to cross-examination about a prior arson conviction. Id. at 879.
      Finally, in Delk v. State, the Court again examined Prescott:
In finding the trial court's decision [in Prescott] to allow impeachment in error, this
Court focused on the defendant's answer in relation to the question he was asked. [Prescott,
744 S.W.2d at 131.] Since the question pertained to the defendant's opinion of legal
procedures employed by his attorney, we did not believe that the defendant's use of the phrase
"going through this" suggested that he had never been the subject of a criminal proceeding. 
Id., at 131-132. We held that the defendant's answer was responsive to the question asked
and the obvious interpretation of the answer was that he had no opinion as to whether his
attorney's decision to take two statements on one day was appropriate or unusual. Id., at 131.
Delk v. State, 855 S.W.2d 700, 704 (Tex. Crim. App.), cert. denied, ___U.S.___, 114 S.Ct. 481,
126 L.Ed.2d 432 (1993). The Court found that a witness had not testified in such a manner as to
allow the defendant to cross-examine him about charges that had not resulted in final convictions. 
Id. at 705.
      We must examine the language to determine if Watson "opened the door" to questions about
offenses that he admitted committing after the date of the offense on trial but of which he had not
been convicted. The State was careful to pinpoint the time-frame that Watson referred to in saying
that he had "learned his lesson" by inquiring if it was the "day this happened." Watson said,
"Yes, sir. And the following days. Every following day I sit down there in that jail cell I think
about what happened and think about how it has messed up my life and how I could be doing
better than I am now." We believe that this testimony was such that Watson left a false impression
with the jury about his (1) arrests, (2) charges, and (3) troubles with the law between the date of
the offense and the date of the trial. See Theus, 845 S.W.2d at 878; Prescott, 744 S.W.2d at 130. 
Because he "opened the door," the court was justified in allowing the State to inquire about
offenses that had occurred during that time period.
      We overrule Watson's sole point and affirm the judgment.


                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed March 29, 1995
Do not publish