

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00032-CR

ANTHONY HEMPHILL,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

**From the 21st District Court
Burleson County, Texas
Trial Court No. 13,533**

## MEMORANDUM OPINION

A jury found Anthony Hemphill guilty of aggravated robbery and assessed punishments of fifty-five years' imprisonment and a $10,000 fine. Raising two issues, Hemphill appeals. We will affirm.

Hemphill was charged with robbing a store clerk at gunpoint at a local convenience store in Somerville. He confessed to police and did not deny committing the robbery at trial, instead contending that he committed the robbery under duress. Hemphill testified that Boo Powell (whom Hemphill associated with) and his "gang"

threatened to "jump" (kill or seriously injure) him if he did not carry out the robbery.[1]

Hemphill's videotaped statement and confession states in part:

> The guys that I hung around with said that if I did stuff that I could get into the gang. If I sold drugs for them, like I'd sell $150 worth and I could keep $50, so I did because I thought that it would be cool.
>
> Now, on CEFCO it didn't matter how much money I got, I had to give it to them and I would be taken care of later. If I didn't get any money and give it to them, then they were going to jump me. After doing the robbery, I never got any of the money that I was supposed to.
> …
> When I got talked into doing this, I was over at Oliver Phillips' house. Jeremy Vela, Boo Powell and Oliver were all there.
> …
> Let me kind of start from the first. Me and Boo was talking about it earlier that day. He came to my house and was chilling with my brother. My brother didn't know anything about the robbery. Boo said, if you're going to do this, you got to get pumped. You got to get pumped for it. He said, rob the store and give me the money. Boo likes to gamble so we went out to the country to some of his buddies family and chilled and drunk beer for about three or four hours. … There was like two carloads of us.
>
> When we came back to Somerville it was early in the morning. I rode with Boo. Boo really, like, pumped my head up. When we got to town, Boo stopped off … where he lives. …
>
> Boo went inside his apartment. Before he went inside he said, now, you going to do this? You going to do this? I said yes. Boo came back out with a gun, he gave me the gun, and went into the trunk of his car and got a black jacket and a black do-rag. I put it on. …

---

[1] Section 8.05 of the Penal Code provides in part:
  (a) It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.
  …
  (c) Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.
  (d) The defense provided by this section is unavailable if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion.
TEX. PEN. CODE ANN. § 8.05 (Vernon 2003).

…
The next day Boo came to my house. I gave him his gun back and all the money. He said that I didn't give him all of it, that there should be more.

The jury was instructed on the affirmative defense of duress but found Hemphill guilty.

Hemphill's first issue contends that the trial court abused its discretion by admitting evidence of several extraneous offenses, and his second issue contends that he received ineffective assistance of counsel because his attorney failed to object to several extraneous offenses.

Under the Texas Rules of Evidence, evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." But it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive. "Rule 404(b) is a rule of inclusion rather than exclusion." The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character. The proponent of uncharged misconduct evidence need not "stuff" a given set of facts into one of the laundry-list exceptions set out in Rule 404(b), but he must be able to explain to the trial court, and to the opponent, the logical and legal rationales that support its admission on a basis other than "bad character" or propensity purpose.

One well-established rationale for admitting evidence of uncharged misconduct is to rebut a defensive issue that negates one of the elements of the offense. That is, a "party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. … "

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial

court. …"  Thus, a trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard.  As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld.  A trial court's ruling is generally within this zone if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury.  Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling.

*De La Paz v. State*, 279 S.W.3d 336, 342-44 (Tex. Crim. App. 2009) (footnotes and citations omitted).

Hemphill's brief addresses five instances of extraneous offenses admitted into evidence.  The first one is Hemphill's statement in his above-quoted videotaped statement that he sold drugs for Powell, and the third instance is his later testimony that detailed his drug-selling.  The statement was admitted into evidence without objection, and no objection was made to Hemphill's testimony.  To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling he desired from the court unless the specific grounds were apparent from the context.  TEX. R. APP. P. 33.1(a)(1).  Because no objection was made to the statement's admissibility or to Hemphill's later testimony about selling drugs, Hemphill cannot complain on appeal that the trial court abused its discretion in admitting the statement or the testimony.

The second instance involved Hemphill's testimony about aggravated assault by Hemphill with a board and criminal mischief involving breaking car windows.  The trial court overruled defense counsel's objection to the relevance of the aggravated

assault evidence.  A Rule 403 objection was not made.

A testifying defendant may be impeached in the same manner as any other witness.  *Hammett v. State*, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986).  But as with any other witness, he cannot be impeached by a prior offense that he has been charged with unless the charges resulted in a final conviction for either a felony offense or an offense involving moral turpitude, neither of which is too remote.  *Prescott v. State*, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988).  However, an exception arises when a defendant testifies and, during direct examination, leaves a false impression as to the extent of his prior arrests, convictions, charges against him, or "trouble" with the police generally.  *Id.* at 131; *Ochoa v. State*, 481 S.W.2d 847, 850 (Tex. Crim. App. 1972).  In such a case, the defendant is deemed to have "opened the door" to an inquiry by the State as to the validity of his testimony.  *Prescott*, 744 S.W.2d at 131.

Hemphill testified but did not mention his prior arrests, charges, or trouble with the police generally.  He thus left a false impression that he had no prior arrests, charges, or trouble with the police and opened the door to an inquiry by the State to correct the false impression.  *See Turner v. State*, 4 S.W.3d 74, 78-80 (Tex. App.—Waco 1999, no pet.).  Moreover, to rebut Hemphill's defensive theory that he committed the robbery only under duress, the State sought to show that Hemphill committed other crimes without being under duress, thus making his duress defense theory less probable.  *See De La Paz*, 279 S.W.3d at 343-44; *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).  We cannot say that the trial court abused its discretion in overruling the relevance objection.  And because no objection was made to the criminal mischief

evidence, Hemphill cannot complain on appeal that the trial court abused its discretion.

The fourth instance is a charge of arson against Hemphill concerning the burning of a home by Hemphill, Powell, and some of the others involved with Powell, which Hemphill denied, although he admitted he had thought about burning the victim's vehicle. Defense counsel objected to relevance twice during this line of questioning and the trial court sustained both objections, but the vast majority of Hemphill's testimony about the arson was not objected to, including testimony that Hemphill had been charged with arson. Accordingly, it has not been preserved for appellate review.

The fifth extraneous-offense episode concerns Hemphill's alleged acts of violence toward jailers during his pretrial incarceration. Because no objection was made to this testimony, Hemphill's complaint has not been preserved for appellate review. We overrule Hemphill's first issue.

Hemphill's second issue on ineffective assistance complains about his trial counsel's above-noted failures to object to extraneous-offense evidence. To prevail on an ineffective assistance of counsel claim, a defendant must first show that his counsel's performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). It must also be shown that the deficient performance prejudiced the defendant. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Tong v.*

*State,* 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *See Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Mitchell,* 68 S.W.3d at 642. Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: "[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson v. State,* 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); *see also Mitchell,* 68 S.W.3d at 642 ("The reasonableness of counsel's choices often involves facts that do not appear in the appellate record.").

In the absence of evidence of trial counsel's reason for the challenged conduct, we assume a strategic reason for trial counsel's conduct, if one can be imagined. *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it") (quoting 3 W. LAFAVE, ET AL., CRIMINAL PROCEDURE § 11.10(c) (2d ed. 1999) and citing *Thompson v. State,* 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). But, if nothing in the record reveals trial counsel's reason, it is improper for us to speculate on it. *See Thompson,* 9 S.W.3d at 814.

We have a silent record on why Hemphill's attorney did not object to most of the

extraneous-offense evidence. Because the appellate record in this case does not evidence the reasons for trial counsel's conduct, and because these alleged deficiencies could have been the subject of trial strategy not revealed by the record, we overrule Hemphill's second issue. *See Jones v. State,* 170 S.W.3d 772, 776 (Tex. App.—Waco 2005, pet. ref'd).

Having overruled Hemphill's two issues, we affirm the trial court's judgment.


                              REX D. DAVIS
                              Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
      (Chief Justice Gray concurs in the judgment to the extent it affirms the trial court's judgment. He does not join the opinion. A separate opinion will not issue. He notes, however, that the statement for which *Turner v. State* is cited on page 5 of the opinion is an overstatement of its holding. A defendant does not open the door to the introduction of extraneous offenses by *not* testifying about them. This is not how Hemphill opened the door. As the court notes, it was the nature of the defense that opened the door to the introduction of this evidence.)
Affirmed
Opinion delivered and filed October 28, 2009
Do not publish
[CRPM]