IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00032-CR

 

Anthony Hemphill,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 21st District
Court

Burleson County, Texas

Trial Court No. 13,533

 



MEMORANDUM  Opinion



 








            A jury found Anthony
Hemphill guilty of aggravated robbery and assessed punishments of fifty-five
years’ imprisonment and a $10,000 fine.  Raising two issues, Hemphill appeals. 
We will affirm.

            Hemphill was charged with
robbing a store clerk at gunpoint at a local convenience store in Somerville.  He confessed to police and did not deny committing the robbery at trial,
instead contending that he committed the robbery under duress.  Hemphill testified
that Boo Powell (whom Hemphill associated with) and his “gang” threatened to
“jump” (kill or seriously injure) him if he did not carry out the robbery.[1] 
Hemphill’s videotaped statement and confession states in part:

            The guys that I hung around
with said that if I did stuff that I could get into the gang.  If I sold drugs
for them, like I’d sell $150 worth and I could keep $50, so I did because I
thought that it would be cool.

 

            Now, on CEFCO it didn’t
matter how much money I got, I had to give it to them and I would be taken care
of later.  If I didn’t get any money and give it to them, then they were going
to jump me.  After doing the robbery, I never got any of the money that I was
supposed to.

…

            When I got talked into doing
this, I was over at Oliver Phillips’ house.  Jeremy Vela, Boo Powell and Oliver
were all there. 

…

            Let me kind of start from
the first.  Me and Boo was talking about it earlier that day.  He came to my
house and was chilling with my brother.  My brother didn’t know anything about
the robbery.  Boo said, if you’re going to do this, you got to get pumped.  You
got to get pumped for it.  He said, rob the store and give me the money.  Boo
likes to gamble so we went out to the country to some of his buddies family and
chilled and drunk beer for about three or four hours. …  There was like two
carloads of us.

 

            When we came back to Somerville it was early in the morning.  I rode with Boo.  Boo really, like, pumped my head
up.  When we got to town, Boo stopped off … where he lives. …

 

            Boo went inside his
apartment.  Before he went inside he said, now, you going to do this?  You
going to do this?  I said yes.  Boo came back out with a gun, he gave me the
gun, and went into the trunk of his car and got a black jacket and a black
do-rag.  I put it on. …

            …

            The next day Boo came to my
house.  I gave him his gun back and all the money.  He said that I didn’t give
him all of it, that there should be more.  

 

            The jury was instructed on
the affirmative defense of duress but found Hemphill guilty.

            Hemphill’s first issue
contends that the trial court abused its discretion by admitting evidence of
several extraneous offenses, and his second issue contends that he received
ineffective assistance of counsel because his attorney failed to object to
several extraneous offenses.

Under the Texas Rules of Evidence,
evidence of other crimes, wrongs, or acts is not admissible “to prove the
character of a person in order to show action in conformity therewith.”  But it
may “be admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident.”  The exceptions listed under Rule 404(b) are neither mutually
exclusive nor collectively exhaustive.  “Rule 404(b) is a rule of inclusion
rather than exclusion.”  The rule excludes only that evidence that is offered
(or will be used) solely for the purpose of proving bad character and hence
conduct in conformity with that bad character.  The proponent of uncharged
misconduct evidence need not “stuff” a given set of facts into one of the laundry-list
exceptions set out in Rule 404(b), but he must be able to explain to the trial
court, and to the opponent, the logical and legal rationales that support its
admission on a basis other than “bad character” or propensity purpose.

 

One well-established rationale for
admitting evidence of uncharged misconduct is to rebut a defensive issue that
negates one of the elements of the offense.  That is, a “party may introduce
evidence of other crimes, wrongs, or acts if such evidence logically serves to
make more or less probable an elemental fact, an evidentiary fact that
inferentially leads to an elemental fact, or defensive evidence that undermines
an elemental fact. … ”

 

“Whether extraneous offense evidence has
relevance apart from character conformity, as required by Rule 404(b), is a
question for the trial court. …”  Thus, a trial court’s ruling on the
admissibility of extraneous offenses is reviewed under an abuse-of-discretion
standard.  As long as the trial court’s ruling is within the “zone of
reasonable disagreement,” there is no abuse of discretion, and the trial court’s
ruling will be upheld.  A trial court’s ruling is generally within this zone if
the evidence shows that 1) an extraneous transaction is relevant to a material,
non-propensity issue, and 2) the probative value of that evidence is not
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading of the jury.  Furthermore, if the trial court’s
evidentiary ruling is correct on any theory of law applicable to that ruling,
it will not be disturbed even if the trial judge gave the wrong reason for his
right ruling.

 

De La Paz v. State, 279 S.W.3d 336, 342-44 (Tex. Crim.
App. 2009) (footnotes and citations omitted).

Hemphill’s brief addresses five instances
of extraneous offenses admitted into evidence.  The first one is Hemphill’s
statement in his above-quoted videotaped statement that he sold drugs for
Powell, and the third instance is his later testimony that detailed his
drug-selling.  The statement was admitted into evidence without objection, and
no objection was made to Hemphill’s testimony.  To preserve a complaint for
appellate review, a party must have presented to the trial court a timely
request, objection, or motion, stating the specific grounds for the ruling he
desired from the court unless the specific grounds were apparent from the
context.  Tex. R. App. P.
33.1(a)(1).  Because no objection was made to the statement’s admissibility or
to Hemphill’s later testimony about selling drugs, Hemphill cannot complain on
appeal that the trial court abused its discretion in admitting the statement or
the testimony.

The second instance involved Hemphill’s
testimony about aggravated assault by Hemphill with a board and criminal
mischief involving breaking car windows.  The trial court overruled defense
counsel’s objection to the relevance of the aggravated assault evidence.  A Rule
403 objection was not made.

            A testifying defendant may
be impeached in the same manner as any other witness.  Hammett v. State,
713 S.W.2d 102, 105 (Tex. Crim. App. 1986).  But as with any other witness, he
cannot be impeached by a prior offense that he has been charged with unless the
charges resulted in a final conviction for either a felony offense or an
offense involving moral turpitude, neither of which is too remote.  Prescott v. State, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988).  However, an
exception arises when a defendant testifies and, during direct examination,
leaves a false impression as to the extent of his prior arrests, convictions,
charges against him, or “trouble” with the police generally.  Id. at
131; Ochoa v. State, 481 S.W.2d 847, 850 (Tex. Crim. App. 1972).  In
such a case, the defendant is deemed to have “opened the door” to an inquiry by
the State as to the validity of his testimony.  Prescott, 744 S.W.2d at
131.

Hemphill testified but did not mention
his prior arrests, charges, or trouble with the police generally.  He thus left
a false impression that he had no prior arrests, charges, or trouble with the
police and opened the door to an inquiry by the State to correct the false
impression.  See Turner v. State, 4 S.W.3d 74, 78-80 (Tex. App.—Waco
1999, no pet.).  Moreover, to rebut Hemphill’s defensive theory that he
committed the robbery only under duress, the State sought to show that Hemphill
committed other crimes without being under duress, thus making his duress
defense theory less probable.  See De La Paz, 279 S.W.3d at
343-44; Bass v. State, 270 S.W.3d 557, 563 (Tex. Crim. App.
2008).  We cannot say that
the trial court abused its discretion in overruling the relevance objection. 
And because no objection was made to the criminal mischief evidence, Hemphill
cannot complain on appeal that the trial court abused its discretion.

The fourth instance is a charge of arson
against Hemphill concerning the burning of a home by Hemphill, Powell, and some
of the others involved with Powell, which Hemphill denied, although he admitted
he had thought about burning the victim’s vehicle.  Defense counsel objected to
relevance twice during this line of questioning and the trial court sustained
both objections, but the vast majority of Hemphill’s testimony about the arson
was not objected to, including testimony that Hemphill had been charged with
arson.  Accordingly, it has not been preserved for appellate review.

The fifth extraneous-offense episode
concerns Hemphill’s alleged acts of violence toward jailers during his pretrial
incarceration.  Because no objection was made to this testimony, Hemphill’s
complaint has not been preserved for appellate review.  We overrule Hemphill’s
first issue.

Hemphill’s second issue on ineffective
assistance complains about his trial counsel’s above-noted failures to object
to extraneous-offense evidence.  To
prevail on an ineffective
assistance of counsel claim,
a defendant must first show that his counsel’s performance was deficient.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674
(1984); see Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002).  It must also be shown that the deficient performance prejudiced the
defendant.  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

Appellate review of defense counsel’s
representation is highly deferential and presumes that counsel’s actions fell
within the wide range of reasonable and professional assistance.  Mallett v.
State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation was
so deficient and so lacking in tactical or strategic decision-making as to
overcome the presumption that counsel’s conduct was reasonable and
professional.  See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Mitchell, 68 S.W.3d at 642.  Rarely will the trial record
contain sufficient information to permit a reviewing court to fairly evaluate
the merits of such a serious allegation:  “[i]n the majority of cases, the
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.”  Thompson v. State, 9 S.W.3d 808, 813-14
(Tex. Crim. App. 1999); see also Mitchell, 68 S.W.3d at 642 (“The
reasonableness of counsel’s choices often involves facts that do not appear in
the appellate record.”).

            In the absence of evidence
of trial counsel’s reason for the challenged conduct, we assume a strategic
reason for trial counsel’s conduct, if one can be imagined.  Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (“an appellate court
‘commonly will assume a strategic motivation if any can possibly be imagined,’
and will not conclude the challenged conduct constituted deficient performance
unless the conduct was so outrageous that no competent attorney would have
engaged in it”) (quoting 3 W. Lafave, et
al., Criminal Procedure § 11.10(c) (2d ed. 1999) and citing Thompson
v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)).  But, if nothing in
the record reveals trial counsel’s reason, it is improper for us to speculate
on it.  See Thompson, 9 S.W.3d at 814.

We have a silent record on why
Hemphill’s attorney did not object to most of the extraneous-offense evidence. 
Because the appellate
record in this case does not evidence the reasons for trial counsel’s conduct, and
because these alleged deficiencies could have been the subject of trial
strategy not revealed by the record, we overrule Hemphill’s second issue.  See
Jones v. State, 170 S.W.3d 772, 776 (Tex. App.—Waco 2005, pet. ref’d).

            Having
overruled Hemphill’s two issues,
we affirm the trial court’s
judgment.

 

 

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

(Chief Justice Gray concurs in the
judgment to the extent it affirms the trial court’s judgment.  He does not join
the opinion.  A separate opinion will not issue.  He notes, however, that the
statement for which Turner v. State is cited on page 5 of the opinion is
an overstatement of its holding.  A defendant does not open the door to the
introduction of extraneous offenses by not testifying about them.  This
is not how Hemphill opened the door.  As the court notes, it was the nature of
the defense that opened the door to the introduction of this evidence.)

Affirmed

Opinion
delivered and filed October 28, 2009

Do
not publish

[CRPM]









[1] Section 8.05 of the
Penal Code provides in part:

(a) It is an
affirmative defense to prosecution that the actor engaged in the proscribed
conduct because he was compelled to do so by threat of imminent death or
serious bodily injury to himself or another.

…

(c) Compulsion within
the meaning of this section exists only if the force or threat of force would
render a person of reasonable firmness incapable of resisting the pressure.

(d) The defense
provided by this section is unavailable if the actor intentionally, knowingly,
or recklessly placed himself in a situation in which it was probable that he
would be subjected to compulsion.

Tex. Pen. Code Ann. § 8.05 (Vernon 2003).