COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-031-CR
 
  
PERRY 
COLLINS WEST                                                           APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
 
------------
 
OPINION *
 
------------
 
I. Introduction
        A 
jury convicted Appellant Perry Collins West of driving while intoxicated, and 
the trial court, having accepted West’s pleas of true to the enhancement and 
repeat offender paragraphs, sentenced him to six years’ confinement. In one 
point, West argues that the trial court abused its discretion by allowing the 
State to elicit testimony from him that he had been arrested more than twenty 
times. Because West did not “open the door” to this impeachment evidence, we 
hold that the trial court abused its discretion by permitting the State to 
elicit this testimony. Applying the required harm analysis, we hold that the 
error was harmless. Consequently, we will affirm.
II. Factual 
Background
        On 
June 2, 2002, Fort Worth Police Officer Todd Greer was patrolling the west side 
of Fort Worth for prostitution activity. He observed a young female, whom he 
described as provocatively dressed, enter a white pickup truck driven by West. 
Officer Greer followed the truck briefly, noticed that the truck’s license 
plate light was out, and initiated a traffic stop. Officer Greer noticed the 
strong odor of alcohol emanating from the truck’s interior and requested the 
assistance of another officer. Officer George Rusnak arrived and had West 
perform three field sobriety tests, the HGN, the walk and turn, and the one leg 
stand tests. West performed poorly on the tests, and Officers Greer and Rusnak 
arrested West after concluding he was intoxicated. At the city jail, West could 
not provide an adequate breath sample for a breath test.
        West 
was charged with driving while intoxicated and pleaded not guilty. At trial, he 
testified that he was not intoxicated at the time of his arrest. During 
cross-examination, West testified that he “was shocked that they took [him] to 
jail in the first place” and that he “was totally shocked to be arrested in 
the first place.” Soon thereafter, the following exchange took place:
   
[Prosecutor]: Now, when your father testified for you yesterday, he testified 
that you left the house about 8:00. Do you remember that?
 
[West]: 
Yes, I do.
[Prosecutor]: 
Why did you tell the officer on the video that you left the house at seven?
 
[West]: 
I don’t know. I have no clue.
[Prosecutor]: 
Wouldn’t you agree that likely the way you remember things back on September - 
- excuse me, June the 2nd of 2002 is more accurate than almost a year and a half 
later?
 
[West]: 
Maybe in one respect, but in another respect it isn’t.
[Prosecutor]: 
Did you take notes after this happened?
[West]: 
No. But, again, I was so shocked by being arrested and placed in that 
position of being handcuffed and taken to jail for DWI, sure I may have - - 
I may have made a mistake on the time. You bet. [Emphasis added.]
  
 
After 
approaching the bench, the prosecutor argued that West had “just opened the 
door to all of his arrests” by stating that “he was shocked and amazed to 
being arrested.” Outside the presence of the jury and in response to the 
prosecutor’s inquiry as to why he was shocked at being arrested, West stated, 
“Because this time was the first time I have been arrested since 1995. This 
time is when I made a complete effort to turn my life around. That’s why it 
shocked me so much.” The prosecutor then pointed out, however, that West had 
been arrested in 1996 and 2002. The trial court subsequently permitted the State 
to ask the following question in the presence of the jury: “Mr. West, isn’t 
it true that you’ve been arrested more than twenty times.” West responded, 
“Yes.” No further questions were proposed concerning West’s prior arrests.
III. Extraneous 
Offenses Evidence
        In 
his sole point, West argues that the trial court erred by overruling his 
objection and permitting the State to elicit testimony that he had been arrested 
more than twenty times. West contends that his statement that he was 
“shocked” at being arrested was not a blanket assertion denying any prior 
trouble with the law and that the “inflammatory evidence” of twenty prior 
arrests allowed the jury to convict him of being a criminal generally. The State 
argues that the evidence was admissible to rebut and correct “the false 
impression that [West’s] gratuitous statements created” by implying that he 
had never been in trouble with the law.
        A. Standard of Review
        We 
review a trial court’s ruling admitting or excluding evidence for an abuse of 
discretion. Prystash v. State, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999), cert. 
denied, 529 U.S. 1102 (2000); Montgomery v. State, 810 S.W.2d 372, 
391 (Tex. Crim. App. 1991) (op. on reh’g). Appellate courts should give great 
discretion to the trial courts in matters of relevancy, reversing only if the 
trial court acts outside “the zone of reasonable disagreement.” Montgomery, 
810 S.W.2d at 391. Thus, so long as the trial court’s decision to admit or 
exclude evidence falls in the zone within which reasonable minds may differ, 
appellate courts should refrain from disturbing the trial court’s decision on 
appeal. Id.; Karnes v. State, 127 S.W.3d 184, 189 (Tex. 
App.—Fort Worth 2003, no pet.).
        B. False Impressions
        An 
accused puts his character for veracity in issue by taking the stand, and he may 
be impeached in the same manner as any other witness. See Hammett v. State, 
713 S.W.2d 102, 105 (Tex. Crim. App. 1986). Generally, prior offenses are 
inadmissible for impeachment purposes unless the offense resulted in a final 
conviction for either a felony or a crime involving moral turpitude and the 
conviction is not too remote in time. See Ochoa v. State, 481 S.W.2d 847, 
850 (Tex. Crim. App. 1972); Turner v. State, 4 S.W.3d 74, 78-79 (Tex. 
App.—Waco 1999, no pet.); see also Tex. R. Evid. 608, 609. However, an 
exception arises when a defendant testifies and leaves a false impression as to 
the extent of his prior arrests, convictions, charges against him, or 
“trouble” with the police generally. See Prescott v. State, 744 
S.W.2d 128, 131 (Tex. Crim. App. 1988); Ochoa, 481 S.W.2d at 850. In such 
a case, the defendant is deemed to have “opened the door” to an inquiry into 
the veracity of his testimony, and evidence of the defendant’s prior criminal 
record is admissible to correct the false impression. See Martinez v. State, 
728 S.W.2d 360, 362 (Tex. Crim. App. 1987); Turner, 4 S.W.3d at 79.
        Generally, 
the false impression the State seeks to rebut must be created by the defendant 
through direct examination. See Wheeler v. State, 67 S.W.3d 879, 885 
(Tex. Crim. App. 2002). However, when a defendant voluntarily testifies on 
cross-examination concerning his prior criminal record, without any prompting or 
maneuvering on the part of the State, and in so doing leaves a false impression 
with the jury, the State is allowed to correct that false impression by 
introducing evidence of the defendant’s prior criminal record. Martinez, 
728 S.W.2d at 362; see also Roberts v. State, 29 S.W.3d 596, 601 (Tex. 
App.—Houston [1st Dist.] 2000, pet. ref’d).
        Here, 
West stated that he was “shocked” that he was being arrested, handcuffed, 
and taken to jail. He did not state that he had never been “in trouble” with 
the law, that his record was clear of any prior arrests, or that he had never 
been arrested for DWI. We disagree with the State that West’s statements 
created the false impression that he had not previously been arrested. Compare 
Turner, 4 S.W.3d at 78-80 (holding State could impeach defendant with 
subsequent, violent police confrontation when defendant testified six times on 
direct examination that he was polite to police officer who arrested him); Martinez, 
728 S.W.2d at 360-61 (holding State could impeach defendant with prior 
convictions where she responded to prosecutor’s question concerning why she 
was scared by stating, “That was the first time I had been busted, you 
know”). Nor did West’s testimony that he was shocked provide an abbreviated 
account of his past arrests. Compare Reese v. State, 531 S.W.2d 
638, 640-41 (Tex. Crim. App. 1976) (holding defendant’s response to “[w]hat 
kind of trouble do you have with the law” discussing a single prior conviction 
opened door to admission of three other prior convictions). Likewise, West’s 
testimony that he may have misjudged the time on the night of the offense 
because he was shocked at being arrested does not constitute an attempt by West 
to portray himself in a manner inconsistent with his prior criminal record. Compare 
Creekmore v. State, 860 S.W.2d 880, 892-93 (Tex. App.—San Antonio 1993, 
pet. ref’d) (op on reh’g) (allowing evidence of other sexual assaults 
committed by defendant against children after defendant testified that he would 
never sexually abuse child).
        West’s 
first two statements that he was shocked were made in response to the 
prosecutor’s questions concerning his performance on the videotaped sobriety 
tests, and the third statement was made in response to the prosecutor’s 
questions concerning whether West’s memory would have been more accurate on 
the night of the offense or at the time of trial. West’s statements that he 
was shocked communicated his feelings at the time of his arrest, not an 
impression about his criminal history; a person may still feel shocked at being 
arrested, even if the person has been previously arrested multiple times. Here, 
the relevant questions, the answers themselves, and the overall tenor of the 
cross-examination did not create a false impression with the jury concerning 
West’s prior criminal history. See Prescott, 744 S.W.2d at 131. 
Accordingly, West did not “open the door” to impeachment evidence, and 
consequently, the State should not have been permitted to ask West in front of 
the jury whether he had been arrested over twenty times. We hold that the trial 
court abused its discretion by allowing the State to ask West this question. See 
Montgomery, 810 S.W.2d at 392-93.
        C. Harm Analysis
        Having 
found error, we must conduct a harm analysis to determine whether the error 
calls for reversal of the judgment. Tex. 
R. App. P. 44.2. Generally, the erroneous admission or exclusion of 
evidence is non-constitutional error governed by rule 44.2(b) if the trial 
court’s ruling merely offends the rules of evidence. See Solomon v. State, 
49 S.W.3d 356, 365 (Tex. Crim. App. 2001). A reviewing court is to disregard 
non-constitutional error that does not affect the substantial rights of the 
defendant. Tex. R. App. P. 
44.2(b). A substantial right is affected when the error had a substantial and 
injurious effect or influence in determining the jury’s verdict. King v. 
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. 
United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). In making 
this determination, we review the record as a whole. Kotteakos, 328 U.S. 
at 764-65, 66 S. Ct. at 1248.
        When 
performing a harm analysis under rule 44.2(b), we consider “any testimony or 
physical evidence admitted for the jury’s consideration, the nature of the 
evidence supporting the verdict, [and] the character of the alleged error and 
how it might be considered in connection with other evidence in the case.” Morales 
v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We may also consider 
closing arguments, evidence of the defendant’s guilt, and the jury 
instructions. See Motilla v. State, 78 S.W.3d 352, 355-56 (Tex. Crim. 
App. 2002); Morales, 32 S.W.3d at 867.
        In 
the instant case, Officer Greer testified that when he initiated the traffic 
stop of West, West brought his vehicle to a stop in the middle of an 
intersection. Because they were blocking traffic, Officer Greer instructed West 
on his PA system to move forward out of the intersection. West did not respond, 
so Officer Greer approached the vehicle on foot and again instructed West to 
pull forward, out of the intersection. Officer Greer smelled alcohol when he 
approached West’s vehicle and then requested assistance with the stop.
        Officer 
Rusnak arrived and conducted three field sobriety tests with West. Officer 
Rusnak testified that on the HGN test West exhibited vertical nystagmus and 
nystagmus at maximum deviation. During the walk and turn test, West initially 
did not follow Officer Rusnak’s directions, West was unable to maintain his 
balance during the instruction phase, and he was unable to complete the initial 
nine steps out. West swayed three to four inches from side to side during the 
one-leg stand test. Both Officer Greer and Rusnak concluded that West was 
intoxicated.[1]
        Officer 
Pierce conducted a few evaluations of West and testified that West did not 
satisfactorily complete them. West was also unable to provide an adequate breath 
sample for the intoxilyzer.  Officer Pierce concluded that West had “lost 
[normal use of] his mental faculties” because of alcohol.
        As 
an excuse for his poor performance on the tests, West testified that he received 
numerous injuries in Vietnam. He also testified that he had not been drinking 
that day, but that he did take a “swallow” of beer just before being pulled 
over.
        In 
terms of the evidentiary error itself, the State asked West only one question 
concerning his arrests. After this question was asked and answered, the 
prosecutor asked, “What is your driver’s license number?” Thus, the State 
neither inquired into nor dwelled on West’s twenty prior arrests in any 
manner. During closing argument, the State reminded the jury that West had a 
prior conviction for felony driving while intoxicated and theft, but it did not 
address West’s other prior arrests. Additionally, the court’s charge 
instructed the jury that “[a]ll persons are presumed to be innocent . . . . 
The fact that the defendant has been arrested, confined, or indicted for or 
otherwise charged with the offense gives rise to no inference of guilt at the 
defendant’s trial.”
        We 
hold that, in the context of the entire case against West, the trial court’s 
error in permitting the State to ask West whether he had been arrested “more 
than twenty times” did not have a substantial or injurious effect on the 
jury’s verdict and did not affect West’s substantial rights. See King, 
953 S.W.2d at 271. Thus, we disregard the error. See Tex. R. App. P. 44.2(b). We overrule 
West’s sole point.
IV. Conclusion
Having 
overruled West’s only point, we affirm the trial court’s judgment.
   
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
B:   LIVINGSTON, GARDNER, and WALKER, JJ.
 
LIVINGSTON, 
J. filed a concurring opinion.
 
PUBLISH
 
DELIVERED: 
May 26, 2005
 


 
COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-031-CR
 
  
PERRY 
COLLINS WEST                                                           APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
 
------------
 
CONCURRING OPINION
 
------------
        I 
write separately from the majority opinion to diverge from its analysis of the 
extraneous offense evidence.
        When 
we review a trial court’s ruling on the admission or exclusion of evidence, we 
do so under an abuse of discretion standard. Prystash v. State, 3 S.W.3d 
522, 527 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102 (2000). 
Further, a trial court’s evidentiary ruling should be affirmed if it is 
correct under any theory applicable. Sauceda v. State, 129 S.W.3d 116, 
120 (Tex. Crim. App. 2004).
        Generally, 
specific acts of misconduct may not be introduced to impeach a party or witness. 
Prescott v. State, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988); Reyna 
v. State, 99 S.W.3d 344, 349 (Tex. App.—Fort Worth 2003, pet. ref’d). 
Opposing counsel may introduce evidence about otherwise irrelevant past criminal 
history when a witness, during direct examination, “opens the door” or 
“leaves a false impression with the jury as to the extent of either his prior 
arrests, convictions, charges, or trouble with the police.” Reyna, 99 
S.W.3d at 349 (citing Prescott, 744 S.W.2d at 130-31). Additionally, as 
the majority notes, the State may also correct a false impression left by a 
defendant who voluntarily testifies during cross-examination about his prior 
criminal record by offering evidence of his prior record. Martinez v. State, 
728 S.W.2d 360, 362 (Tex. Crim. App. 1987). The exception must relate to the 
defendant’s testimony that is volunteered and related to collateral matters. Hall 
v. State, No. 06-03-00253-CR, 2005 WL 525536, at *10 (Tex. App.—Texarkana 
Jan. 25, 2005, no pet.) (citing Lopez v. State, 928 S.W.2d 528, 531 (Tex. 
Crim. App. 1996)). The opponent must correct the false impression via 
cross-examination of the witness who left the false impression instead of 
calling other witnesses to correct the false impression. Wheeler v. State, 
67 S.W.3d 879, 885 (Tex. Crim. App. 2002). “[A]n appellant who ‘opens the 
door’ to otherwise inadmissable evidence risks having that evidence admitted 
and used against him. However, the party offering the evidence may not ‘stray 
beyond the scope of the invitation.’” Feldman v. State, 71 S.W.3d 
738, 755-56 (Tex. Crim. App. 2002) (citing Schultz v. State, 957 S.W.2d 
52, 71 (Tex. Crim. App. 1997)).
        Here, 
during the State’s cross-examination of appellant, he testified that he was 
“shocked that they took [him] to jail in the first place” and that he “was 
totally shocked to be arrested in the first place.” While further trying to 
pursue a discrepancy in appellant’s testimony regarding the timeline, the 
prosecutor asked appellant whether he had taken notes that would substantiate 
his prior recollection. In response to this question, appellant denied that he 
had taken notes and further volunteered once again that he was “so shocked by 
being arrested and placed in that position of being handcuffed and taken to jail 
for DWI” as his justification for making a mistake on the time he left his 
father’s house. Appellant’s statements as to “being shocked” were 
apparently voluntary and made with a view to explain the discrepancy in his 
testimony regarding the timeline, to justify his behavior regarding the sobriety 
tests and to explain his refusal to complete a valid breath test. The trial 
court only allowed the State to ask one question of the appellant to clear up 
the false impression he left implying he had not been arrested before by asking 
only if he had been arrested more than 20 times.
        I 
would therefore conclude that the State’s one question into appellant’s 
number of prior arrests only was strictly limited to rebut the false impression 
appellant attempted to create before the jury and did not stray beyond the scope 
of the invitation. For this reason, I would conclude that the trial court’s 
ruling was not outside the zone of reasonable disagreement and it was therefore 
within the trial court’s discretion to admit the limited rebuttal question. 
For this reason, I respectfully concur in the majority’s decision.
  
   
                                                          TERRIE 
LIVINGSTON
                                                          JUSTICE
  
  
PUBLISH
 
DELIVERED: 
May 26, 2005


 
NOTES
* Majority Opinion by Justice Walker; Concurrence by Justice 
Livingston
 
       
 MAJORITY OPINION NOTES
 
1. 
Officer Rusnak further testified that West had a strong odor of alcohol on his 
breath and person, that he had bloodshot or dilated eyes, and that his speech 
was slurred.