# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-16-00178-CR
_____

**WILBUR JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 15-21285**

## MEMORANDUM OPINION

A jury found Appellant, Wilbur Jones ("Jones"), guilty of sexual assault and sentenced him to five years in prison. Jones appeals his conviction.

### Background

This case arose from an encounter between Jones and J.J.[1] at a senior rehabilitation center. Jones was employed as a part-time caretaker by the family of

---

[1] To protect the privacy of the victim, we identify her by her initials. *See* Tex. Const. art. I, § 30(a)(1) (granting victims of crime "the right to be treated with

1

an elderly resident of the facility, and J.J. was a nurse's aide at the same facility. Jones and J.J. were casual acquaintances and lived in the same neighborhood.

On June 30, 2014, Jones entered the facility at approximately 8:30 p.m. to retrieve items for the resident he cared for, who had recently been admitted to the hospital. Jones saw J.J. at the nurse's station and asked her to accompany him to the resident's room.[2] J.J. agreed, since she needed to attend to the needs of another patient in that room. Surveillance video captured Jones and J.J. entering the room together at 8:41 p.m. While there, Jones retrieved certain items for his patient, and J.J. cleaned the resident assigned to her and helped him into bed.

The evidence concerning what else transpired in the room is disputed. J.J. testified that when they entered the room, Jones kissed and grabbed her. She further testified that she "[k]issed him back a little" before she stopped, told him "it was wrong" and "it didn't feel right." J.J. testified that after the kissing stopped, she cleaned and changed the patient. J.J. testified she began removing her gloves in the bathroom when Jones approached her, pinned her against the wall, and proceeded to sexually assault her. J.J. testified that this occurred despite her protests and her

---

fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[2] Jones indicated in his statement that it was his practice to have an employee of the facility escort him to his patient's room.

unwillingness to engage in such activity. J.J. further testified that she was scared and pushed Jones off of her. She then quickly walked out of the room and reported the incident to several co-workers.

In a video statement Jones gave to the detective, he indicated he did not touch J.J. inappropriately. Jones said that while they were in the room, he confronted and admonished J.J. about her use of his patient's personal items on the other resident. Jones indicated that when he told J.J. he would report her for doing so, she became hysterical.

Surveillance video shows J.J. exiting the room at 8:47 p.m., followed by Jones shortly thereafter. Jones indicated he left the facility thereafter to take his patient's personal items to the hospital.

That night, after reporting the assault to her co-workers, J.J. met with police officers at the facility and was taken to St. Elizabeth Hospital for an exam by a sexual assault nurse examiner ("SANE"). No male DNA was detected in any of the SANE exam samples.

A grand jury indicted Jones for sexual assault. *See* Tex. Pen. Code § 22.011 (West Supp. 2017). Jones entered a plea of not guilty and the case was tried to a jury.

During the trial, Jones sought to cross-examine J.J. about a consensual sexual encounter she had with another employee at the facility more than eight months after the alleged assault by Jones. He also sought to admit into evidence three documents

relating to that subsequent encounter: (1) a handwritten memorandum prepared by the rehabilitation center administrator and signed by J.J.; (2) a memorandum prepared by J.J. describing the consensual sexual encounter, wherein she reported herself to her supervisor for the inappropriate conduct; and (3) a disciplinary warning dated April 7, 2015, concerning the post-incident sexual encounter. Jones argued that the evidence and cross-examination was allowable and relevant because, during questioning about her assault by Jones, J.J. testified that she felt it was wrong to engage in sexual activity at work.

The trial judge conducted a hearing outside the jury's presence and ruled that the evidence was prohibited under Texas Rule of Evidence 412. The court further found that the probative value of the evidence was far outweighed by the prejudicial nature of admitting evidence of J.J.'s post-incident sexual behavior. Jones tendered bills of exception for the excluded documents.

The jury found Jones guilty of sexual assault and sentenced him to five years. On appeal, Jones argues the trial court erred in denying him the opportunity to cross-examine J.J. for impeachment purposes about her statements regarding her behavior at work when the jury was left with a false impression after direct examination.[3]

---

[3] Jones's brief presents this argument as two separate issues; however, they are substantively and analytically indistinguishable. Therefore, we address both as one issue.

**Standard of Review**

"The trial court has discretion as to the extent of cross-examination of a witness for the showing of bias or as to credibility, and its decision is not subject to reversal on appeal absent a clear abuse of discretion." *Cantu v. State*, 939 S.W.2d 627, 635 (Tex. Crim. App. 1997); *Virts v. State*, 739 S.W.2d 25, 28 (Tex. Crim. App. 1987) (noting "great deference" is given to the trial judge initially deciding whether evidence should be admitted for the jury's consideration). We also review a trial court's ruling on the admission of evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (op. on reh'g).

**Analysis**

The United States Constitution and the Texas Constitution provide that an accused will have the right to confront witnesses against him. *See generally* U.S. Const. amend. VI; Tex. Const. art. I, § 10.

> The Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination. Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules.

*Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-

examination. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Whether rooted in the Due Process Clause of the Fourteenth Amendment or the Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants the opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Indeed, the constitutional right to present a defense includes the right to compulsory process and the rights to confront and cross-examine witnesses. *See Pointer v. Texas, 380 U.S. 400, 405 (1965).* The constitutionally improper denial of a defendant's opportunity to impeach a witness is subject to a harmless-error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

A defendant does not have an unqualified right to cross-examination, however. *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016). A defendant "is not entitled to cross-examination that is effective in whatever way, and to whatever extent he might wish." *Id.* at 909–10 (internal quotations and citations omitted). Trial judges have wide latitude to limit the scope of cross-examination by imposing restrictions on cross-examination. *Id.* at 910. As long as the limits do not operate to infringe upon the Confrontation Clause's guarantee of "an opportunity for effective cross-examination," a trial judge may limit the scope. *Id.* at 909 (quoting *Thaxton D. Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014)). We uphold a trial judge's decision to admit or exclude evidence as long as the result is

6

not outside the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391–92.

"Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules." *Hammer*, 296 S.W.3d at 561. Therefore, questions involving cross-examination can be resolved by looking to the Texas Rules of Evidence. *Id.* One such rule, known as Texas's "rape shield" law, places constraints on the admission of evidence of a complaining witness's past sexual behavior. *See generally* Tex. R. Evid. 412. Evidence of a complaining witness's past sexual behavior, either in the form of specific instances of conduct or reputation or opinion evidence, is not admissible in a criminal trial for sexual assault. *See* Tex. R. Evid. 412(a). There are exceptions for evidence of specific instances of a victim's past sexual behavior including, as relevant here, evidence that "is constitutionally required to be admitted." Tex. R. Evid. 412(b)(2)(E). However, even if the evidence meets one of the exceptions, the inquiry does not end there; the probative value of the proffered evidence must also outweigh the danger of unfair prejudice. *See* Tex. R. Evid. 412(b)(3); *State v. Dudley*, 223 S.W.3d 717, 724 (Tex. App.—Tyler 2007, no pet.).

A witness who creates a false impression while testifying may generally be cross-examined about previous statements or actions inconsistent with that

7

impression. *See Pyles v. State*, 755 S.W.2d 98, 115 (Tex. Crim. App. 1988); *Dudley*, 223 S.W.3d at 724. As the Texas Court of Criminal Appeals has explained, when a witness leaves "a false impression during his direct examination, he is commonly said to have 'opened the door' to an inquiry . . . as to the validity of his testimony." *Prescott v. State*, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988). When testimony contains an alleged ambiguity or gives a false impression, the complained-of response should be narrowly construed. *Id.* Moreover, "[w]hen attempting to determine the meaning of a response, the predicate question is a determinative interpretative tool." *Id.*

Central to Jones's complaints on appeal, the following exchange occurred during J.J.'s direct examination at trial:

Q: Did you say anything?

A: Just told him that it was wrong and that we shouldn't do this.

Q: What did you mean by wrong? Is that because you were at work or because you didn't want it to happen at all?

A: Because I was at work, and I definitely didn't want that to happen at all.

Jones argues that the "at work" portion of J.J.'s testimony left a false impression with the jury. Specifically, he asserts that J.J., as the complaining witness, tried to convince the jury she would not engage in that activity at work, and

8

he should have been allowed to cross-examine her about the documents offered in his bill of exception. The documents showed J.J. had a sexual encounter at work with another employee over eight months later, which she voluntarily reported herself because she felt guilty, and was disciplined for it. Jones asserts that the trial court's refusal to allow him to question J.J. about these documents violated his right to confront and cross-examine the witness.[4]

At trial, the judge concluded the probative value of the proffered documents was far outweighed by the prejudicial effect of admitting evidence of J.J.'s post-incident sexual behavior. The trial judge had the question and answer read back to him during the hearing and explained, "'At work' is not the key component here." In conducting his analysis, the trial judge looked at the context of the questions asked and the responses. The trial court interpreted the testimony to mean that J.J. was focusing on her unwillingness to engage in the encounter because she did not want it to happen at all, not the fact that she was at work. In doing so, it paid particular

---

[4] Jones also argued at the hearing that Rule 412 was limited in its application to sexual encounters prior to the alleged incident; however, the trial court noted that "past sexual behavior" means sexual behavior that occurs before trial, citing *Cuyler v. State*, 841 S.W.2d 933, 936 (Tex. App.—Austin 1992, no writ). In *Cuyler*, the Austin Court of Appeals held, "[i]n a prosecution for sexual assault or other offense to which it applies, Rule 412 governs the admission of *all* evidence of extraneous sexual behavior of the complaining witness, including sexual behavior that occurs after the alleged offense." *Id.*

attention to J.J.'s statement "and I didn't want it to happen," which he concluded meant J.J. "didn't want nonconsen[sual] sex to occur[.]" This is consistent with the settled principle of narrowly construing alleged ambiguities in testimony. *See Prescott*, 744 S.W.2d at 131. We conclude the trial court did not abuse its discretion in determining J.J.'s testimony did not leave a false impression.

Furthermore, a review of the excluded documents suggest that they are, in fact, consistent with J.J.'s testimony. The memorandum J.J. prepared specifically stated she "need[ed] to come clean" and she "felt guilty" about the post-incident consensual sexual encounter at work. Thus, the excluded documents would not serve to impeach; rather, the only purpose allowing Jones to question J.J. about them would serve is to reveal a post-incident sexual encounter, which the trial judge properly excluded on the basis that any probative value would be far outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 412(b)(3).

When evidence is constitutionally required to be admitted under 412, the trial court must still determine that the probative value is not substantially outweighed by undue prejudice. *See* Tex. R. Evid. 412(b)(2)(E), (b)(3); *Dudley*, 223 S.W.3d at 724. Here, the excluded evidence fails to meet either of the required prongs for evidence to be admissible as an exception to Rule 412(b)(2)(E). *See* Tex. R. Evid. 412(b)(2)(E), (b)(3). First, the documents are not inconsistent with the complaining witness's testimony on direct examination; to the contrary, they confirm her

10

statement that she felt sexual activity at work was wrong. Therefore, Jones's constitutional right to cross-examine J.J. about the documents for purposes of impeachment was not implicated. *See* Tex. R. Evid. 412(b)(2)(E). Furthermore, even if the evidence were probative for purposes of impeachment, the trial court properly excluded the documents and testimony under the other prong of 412, which requires the probative value of the evidence outweigh the danger of unfair prejudice before it is admitted as an exception to Rule 412. *See* Tex. R. Evid. 412(b)(3); *Dudley*, 223 S.W.3d at 724.

## Conclusion

In light of the foregoing, we find the trial judge did not abuse his discretion, and the limitations placed on cross-examination in this case were proper. We do not undertake a harm analysis, because we have determined that the trial judge was not outside the zone of reasonable disagreement, and there was no constitutionally improper limitation placed on Appellant's right to cross-examine the complaining witness. The judgment of the trial court is affirmed.

AFFIRMED.

_____
CHARLES KREGER
Justice

11

Submitted on November 7, 2017
Opinion Delivered February 28, 2018
Do Not Publish

Before McKeithen, C.J., Kreger, and Johnson, JJ.