**In The**
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00026-CR**

**RICHARD ADAM CASTILLO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-06-07332-CR**

**MEMORANDUM OPINION**

A jury convicted Richard Adam Castillo of aggravated sexual assault of a thirteen-year-old child and sentenced him to incarceration for a period of five years in the Texas Department of Corrections, Institutional Division. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B). Castillo alleges he was harmed by the trial court's evidentiary rulings regarding three groups of issues and complains that the trial court: (1) excluded his testimony regarding precautions he took around the victim; (2) disallowed cross-examination of the victim's mother regarding events preceding

1

the assault; and (3) disallowed cross-examination of the sexual assault nurse examiner (SANE) regarding the victim's reported history. For the following reasons, we affirm.

## I. Background and Evidence at Trial

Castillo resided on the same property as the victim, S.M.,[1] and her family. Castillo is S.M.'s uncle and S.M.'s mother is Castillo's sister.

### A. S.M.'s Testimony

One morning, S.M. was in her brother's room watching television with her siblings, some of whom were on the same bed. She testified that Castillo came into the room and tried to get her to go watch a movie with him, but she refused because she was tired. When she would not get out of bed, Castillo climbed into the bed next to her and pulled her blanket over both of them. S.M. said that Castillo began rubbing her back and proceeded to sexually assault her.

S.M. testified that following the assault, Castillo begged her not to say anything and told her he would give her whatever she wanted. S.M. explained that after the assault, she took a bath because she "felt dirty." She then wrote a note

---

[1] We refer to the victim and her mother by their initials to conceal their identity. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]").

describing the assault and gave it to her mother, D.M. At trial, a copy of this letter was admitted into evidence, read to the jury, and published to the jury.

## B. D.M.'s Testimony

S.M.'s mother, D.M., testified at trial as the outcry witness. She stated that when S.M. handed her the note, she was "shocked [and] numb." D.M. then called Castillo, who had already left the house. When she called him and asked him "where are you?" Castillo responded by asking "why," which D.M. thought was strange. D.M. then told Castillo, "I think you know why[.]" D.M. told the jury she had a second phone conversation with Castillo in which he admitted he "[messed] up."

D.M. testified that when Castillo returned home, she met him outside and described an emotional exchange they had in which Castillo did not deny assaulting S.M. Instead, he tried to explain it was S.M.'s fault, alleging that "I was half asleep and she came against me[]" and again admitted he "[messed] up." D.M. said she then called 9-1-1, and police and EMS personnel arrived at the home. She never heard Castillo deny it happened.

She described how the family's life has changed since this happened. D.M. said that after the incident, she eventually sought counseling for S.M.

## C. Castillo's Testimony

Castillo admitted that he went into the bedroom to where S.M. and the other children were the morning in question. However, he denied the assault occurred or

3

that he promised to give her anything in return for her silence. He testified that S.M. lied about the assault. The trial court refused to allow Castillo to testify as to the reasons he took "precautions" around S.M. Specifically, he wanted to testify the reason was because she had been sexually abused by someone else previously, and she had accused Castillo of being "creepy" on a prior occasion. While arguing for this evidence's admissibility, Castillo did not assert in the trial court that S.M.'s prior outcry of sexual abuse was false.

**D. EMS Personnel Testimony**

Two EMS attendants who responded to the scene also testified regarding their treatment of Castillo. According to one attendant, Castillo advised that he took Benadryl in an attempt to kill himself. Both attendants confirmed that Castillo was alert and oriented. One EMS attendant testified that when asked why he wanted to kill himself, Castillo responded, "[b]ecause of what I did[.]" The other EMS also testified that Castillo said he took Ibuprofen and Bendaryl "because of what he had done." One EMS attendant testified that Castillo never denied what he had done to his niece.

**E. Officer's Testimony**

A Montgomery County Sheriff's Office deputy who responded to the scene testified regarding his observations. He recorded video from the patrol car but described the audio quality as "poor." The deputy was present when his sergeant

questioned Castillo. When they spoke to Castillo, the officers already knew what S.M. said had happened, and Castillo told the officers he tried to kill himself because "he messed up." Castillo admitted he and the victim were on a bed together and said that "she pushed up against him." According to the deputy, Castillo told them he put his hands down her pants and confirmed to him that he assaulted his niece in the manner alleged. The deputy indicated that he had no doubt Castillo admitted committing the crime.

## F. Forensic Interviewer's Testimony

The forensic interviewer from Children's Safe Harbor who interviewed S.M. also testified. She said that she interviewed S.M. and six of her siblings. Because she was not the outcry witness, she did not provide testimony regarding those interviews. She generally described the forensic interview process for the jury.

## G. SANE's Testimony

The SANE testified at trial regarding her examination of S.M. Following the incident, S.M. was taken to the hospital to be examined by a SANE. During the SANE's testimony, the medical records of the exam were admitted into evidence, which included a "word-for-word[]" narrative of the assault S.M. relayed to her. At trial, the defense argued Castillo should be allowed to cross-examine the SANE regarding the victim's sexual history to clarify the impression that the victim was not sexually active before this incident. The defense further contended that the trial

5

court's failure to do so would deny him the right to present a complete defense and would deny him the right to cross-examine and confront his accusers. The trial court would not allow such questioning and cited Texas Rule of Evidence 412.

## H. Dashcam Video

An officer's dashcam video recording was also admitted into evidence. The audio quality of the recording is poor. An officer can be heard questioning Castillo, but many of Castillo's responses are inaudible. However, Castillo can be heard telling the officers that he and the victim "were watching TV, and she kept pressing up against me." When the officer asks if he put his hands down her pants on the inside or outside of her panties, he can be heard saying, "Outside." The following exchange then took place:

Officer: So, you didn't put your finger inside of her vagina?

Castillo: Yeah.

Officer: You did? Okay. Okay.

## II. Standard of Review

We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *See Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court does not abuse its discretion if its ruling lies within the zone of reasonable disagreement. *See Johnson*, 490 S.W.3d at 908; *Martinez v. State*, 327 S.W.3d 727,

6

736 (Tex. Crim. App. 2010). If the trial court's evidentiary ruling is correct under any applicable legal theory, we will not disturb it even if the trial court articulated an incorrect or insufficient reason for its ruling. *See Johnson*, 490 S.W.3d at 908.

The constitutionally improper denial of a defendant's opportunity to impeach a witness is subject to a harmless-error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). "A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right." Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b). We will not reverse a conviction if we have "fair assurance from an examination of the record as a whole that the error did not influence the jury or had but slight effect." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

### III. Law

Generally, relevant evidence is admissible, and irrelevant evidence is inadmissible. *See* Tex. R. Evid. 402. Relevant evidence tends to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. *Id.* 401.

The United States Constitution and the Texas Constitution provide that an accused will have the right to confront witnesses against him. *See generally* U.S. CONST. AMEND. VI; Tex. Const. art. I, § 10.

> The Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. This right is not unqualified, however; the trial judge has wide discretion in limiting

7

the scope and extent of cross-examination. Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules.

*Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Whether rooted in the Due Process Clause of the Fourteenth Amendment or the Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants the opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The constitutional right to present a defense includes the right to compulsory process and the rights to confront and cross-examine witnesses. *Pointer v. Texas*, 380 U.S. 400, 405 (1965).

A defendant's right to cross-examination is not unqualified, however. *Johnson*, 490 S.W.3d at 909. A defendant "is not entitled to 'cross-examination that is effective in whatever way, and to whatever extent,' he might wish." *Id.* at 909-10 (internal quotations and citations omitted). Trial judges have wide latitude to limit the scope of cross-examination by imposing restrictions on cross-examination. *Id.* at 910. A trial judge may limit the scope if the limits do not infringe upon the Confrontation Clause's guarantee of "'an opportunity for effective cross-examination.'" *Id.* at 909 (quoting *Johnson v. State*, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014)).

8

Because the right to present evidence and cross-examine witnesses under the Sixth Amendment generally does not conflict with corresponding rights under state evidentiary rules, questions involving cross-examination can be resolved by looking to the Texas Rules of Evidence. *See Hammer*, 296 S.W.3d at 561. One such rule, Texas's "rape shield" law, places constraints on the admission of evidence of a complaining witness's past sexual behavior. *See generally* Tex. R. Evid. 412. Evidence of a complaining witness's past sexual behavior, either in the form of specific instances of conduct or reputation or opinion evidence, is generally inadmissible in a criminal sexual assault trial. *See* Tex. R. Evid. 412(a). That rule bars evidence of a victim's prior sexual conduct unless it falls within five exceptions: (1) it is necessary to rebut or explain scientific or medical evidence offered by the State; (2) it concerns past sexual behavior with the defendant and is offered by the defendant to establish consent; (3) it relates to the motive or bias of the alleged victim; (4) it is admissible under rule 609;[2] or (5) it is constitutionally required to be admitted. *See id.* 412(b)(2). In addition to qualifying as one of the forgoing exceptions, the probative value of the evidence must outweigh the danger of unfair prejudice. *See id.* 412(b)(3).

---

[2] Rule 609 pertains to the admission of evidence of prior criminal convictions for impeachment purposes. *See* Tex. R. Evid. 609.

9

There are exceptions for evidence of specific instances of a victim's past sexual behavior including, as relevant here, evidence that "is constitutionally required to be admitted[.]" Tex. R. Evid. 412(b)(2)(E). "The Constitution requires, however, only the introduction of otherwise relevant and admissible evidence." *Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd) (citing *United States v. Nixon*, 418 U.S. 683, 711 (1974)). Thus, before a victim's sexual behavior can be admitted under Rule 412(b)(2)(E), the defendant must establish the evidence's relevancy to a material issue in the case. *See id.* Even if the evidence meets one of the exceptions, the inquiry does not end there; the probative value of the proffered evidence must also outweigh the danger of unfair prejudice. *See* Tex. R. Evid. 412(b)(3); *State v. Dudley*, 223 S.W.3d 717, 724 (Tex. App.—Tyler 2007, no pet.).

A witness who creates a false impression while testifying may generally be cross-examined about previous statements or actions inconsistent with that impression. *See Pyles v. State*, 755 S.W.2d 98, 115 (Tex. Crim. App. 1988); *Dudley*, 223 S.W.3d at 724. When a witness leaves "a false impression during his direct examination, he is commonly said to have 'opened the door' to an inquiry . . . as to the validity of his testimony." *Prescott v. State*, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988). When testimony contains an alleged ambiguity or gives a false impression, the complained-of response should be narrowly construed. *Id.* at

132. Moreover, "[w]hen attempting to determine the meaning of a response, the predicate question is a determinative interpretative tool." *Id.*

## IV. Application

## A. Issues One through Three: Testimony Regarding Castillo's Precautions

In his first group of issues, Castillo contends the trial court erred by failing to permit him to testify regarding precautions he took in his relationship with S.M. Castillo argues that he should have been permitted to testify regarding the reasons he took steps to ensure that he was not alone with S.M. given (1) her prior sexual abuse outcry against another individual, and (2) she previously accused Castillo of behaving in a "creepy" manner, after which he did not want to be alone with her to avoid the chance of sexual misconduct allegations. Castillo contends this went to his defense that he never touched S.M. and to S.M.'s credibility. He asserts that he was denied the right to due process and a fair trial, because he was prevented from putting on a meaningful defense.

Castillo failed to establish the relevance of evidence of S.M.'s prior sexual assault allegations against another as a reason he took precautions around or avoided her. Such evidence would not make a fact of consequence more or less probable, given his admission that he was with her on the bed on the morning in question. *See* Tex. R. Evid. 401.

11

The defense's "proffer" regarding S.M. accusing Castillo of being "creepy" following a water gun fight, was as follows:

> [Castillo] was referring to an incident where he had a water gun fight with [S.M.]. [S.M.] got upset with him. She ran off, went to her mother, told her mother he had done something creepy. He didn't know exactly what it was, but she had a discussion with him -- her mother saying, from now on, I will keep my distance from her. I'm not going to be alone with her in any way, shape or form because I don't want anything to occur because he knew about the other sexual allegation. So, without bringing up the other sexual allegation, this is what he's telling me what he was bringing up, not concerning the sexual allegation. *He doesn't know what the creepy thing was that she said to mama.*

(Emphasis added.) While the "proffer" regarding S.M.'s "creepy" allegation was sparse on details, Castillo argued for its admission to show that he avoided S.M. and why. However, he has failed to meet his burden of showing such evidence was relevant where he admitted he was on the bed with S.M. the morning in question and there were a number of other children in the room when the alleged assault occurred. *See* Tex. R. Evid. 401. In the absence of a showing of relevance, such testimony was properly excluded. *See id.* 402.

Further, with respect to the prior sexual assault allegation, it does not fall within Rule 412's list of exceptions. Rather than using S.M.'s prior sexual assault allegation to establish S.M.'s bias or motive, Castillo sought to use the allegation to establish his motive for avoiding S.M. *See id.* 412(b)(2)(C) (noting an exception to prove the *victim's* bias or motive) (emphasis added). As to his argument that the evidence went to S.M.'s credibility, absent proof that the prior allegation involving

another individual was false or that the allegation was similar, the evidence fails to have any probative value impeaching the complainant's credibility. *See Lopez v. State*, 18 S.W.3d 220, 226 (Tex. Crim. App. 2000) (explaining that without proof the prior allegation was false or the two accusations were similar, the evidence fails to have any probative value in impeaching [complainant's] credibility). The trial court did not abuse its discretion by precluding this testimony. We overrule issues one through three.

**B. Issues Four through Six: Cross-Examination of Complainant's Mother**

The second evidentiary ruling Castillo complains of is the trial court's refusal to permit him to cross-examine D.M. regarding a prior instance of S.M. accusing someone of sexual abuse. Castillo noted that on direct "they asked her, [d]id it have an [e]ffect on your family -- regarding what [e]ffect it had on your family, and the family was never the same after this event, that they had to move out of the house because of this event."

During the State's direct examination, D.M was asked if Castillo continued to reside at their home following the incident, and she responded, "No." The following exchange then occurred:

[PROSECUTOR] How has your family, I guess, changed since then?

[D.M.] It's been a rollercoaster. My kids don't have the same mom that they did prior. My husband doesn't have the same wife he did prior to June 3rd. Each child is affected by it, you know, [S.M.] especially. There were times where I had to force her to get up because she would

go into a depressant stage, and I'm like, We are not doing this. We are going to keep going and moving forward. I had to put her in therapy. The other children that you see, the little ones, they talk about him all the time. [S.M.] doesn't -- she sits there because the boys don't know anything about the situation. So, they talk about him during holidays, birthdays. My little one actually got glasses and they are really thick and he was upset because kids were making fun of him and he just wanted his uncle because he felt like he could make it better. The other one got into an argument with another kid at school because Adam -- he's a big fan of Alien vs. Predator and Adam found an app where you can talk to the predator and a kid told him he wasn't real and he fought because he said, Uncle Adam says it is. So it's real. They all miss him. They don't understand why he's not around. I'm sure they feel abandoned by him, but we are just taking steps. It's still hard for everybody.

[PROSECUTOR] Would it be fair to say for the entire family, your family dynamic and your lives are worse off now than before this happened [o]n June 3rd, 2018?

[D.M.] Yes. It's very stressful. My husband and I are very paranoid. Our kids don't go anywhere without us. Even [S.M.] -- she's going to be 15 in March, and our kids are very -- more -- sheltered more than they ever were.

A hearing outside the jury's presence occurred where the defense argued it should be permitted to cross-examine D.M. regarding S.M.'s prior sexual abuse allegation. The defense argued that D.M.'s testimony regarding the family's problems in the wake of Castillo's abuse left a false impression with the jury, particularly that the family had no problems before this incident and all their difficulties were due to this incident. In the trial court, Castillo cited *Ex Parte Ghahremani* in support of his argument and complained his right to due process, a fair trial and a meaningful defense were implicated.

14

The trial court ruled that Castillo could obtain clarification regarding D.M.'s testimony but could not go into the prior sexual assault allegation by S.M. and cited Rule 412. On appeal, Castillo argues that this failure to allow him this cross-examination prevented him from clarifying the false impression D.M. left with the jury, thus impacted his right to due process, a fair trial, and to present a meaningful defense.

We disagree that D.M.'s testimony left a false impression with the jury that their family had no problems prior to this incident. She was asked *how* their life had changed since this. Her testimony conveyed that Castillo no longer lived with them, that the children missed him, and that S.M. had to undergo counseling.[3] D.M. did not testify they were without problems prior to this. Rather, her testimony focused on the family's changes since the incident. Any evidence regarding this specific incident of a prior sexual assault allegation did not fall within Rule 412's recognized exceptions. *See* Tex. R. Evid. 412. This case is distinguishable from *Ex parte Ghahremani*, where the State knowingly used false testimony, which constituted a due process violation. *See Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex. Crim. App. 2011). There, the witness denied anything except a drug overdose occurred

---

[3] Elsewhere, D.M. explained that S.M. never had to undergo counseling prior to this. Upon cross-examination by the defense, D.M. testified that S.M. did not begin counseling immediately after the incident. She had to force S.M. to begin counseling about a year after the incident.

between the sexual assault and the complainant's need for intensive therapy. *See id.* at 479. However, evidence existed that prior to therapy and after the sexual assault, she was on drugs, had run away from home and had been sexually assaulted again, returning home with evidence of that assault still on her body but she could not recall who her assailant was, and it was only after these occurrences she was sent to intensive therapy. *See id.* Such is not the case here.

Further, irrelevant evidence is inadmissible. *See* Tex. R. Evid. 402. Castillo failed to show at trial or on appeal that S.M.'s prior sexual assault allegation involving another individual was in any way relevant to the issue of how their family had changed after Castillo assaulted S.M. He did not assert in the trial court or on appeal that S.M.'s prior sexual abuse outcry was false. While the defense submitted a list of questions that he wanted to ask D.M. regarding the family situation and the prior alleged sexual assault by another individual, there was no indication of what the responses would have been. Apart from knowing the prior sexual assault allegation involved a different individual, no other information regarding the allegation of a prior sexual assault was developed in the record. The trial court did not abuse its discretion by refusing to permit the defense to cross-examine S.M.'s mother regarding S.M.'s prior sexual assault allegation. We overrule these issues.

16

## C. Issues Seven through Nine: SANE's Cross-Examination

In his last group of issues, Castillo complains that the trial court erred by limiting his cross-examination of the SANE who examined S.M. following the assault. Again, Castillo argues he should have been permitted to question the SANE regarding the history S.M. reported to her, specifically her prior instance of alleged sexual abuse. As the proponent of such evidence, Castillo has failed to show its relevance or that a prior allegation of sexual abuse against S.M. would tend to make this assault more or less likely to have occurred. *See* Tex. R. Evid. 401. In the absence of a showing of its relevance, such evidence is inadmissible. *See id.* 402. Castillo does not allege the prior sexual assault outcry against another individual was false or otherwise show any similarity to the accusations in this case. *See Lopez*, 18 S.W.3d at 226. Neither does he attempt to connect that allegation with S.M.'s motive or bias to falsely accuse him in this case. *See* Tex. R. Evid. 412(b)(2)(C).

Finally, in support of this argument, Castillo contends the State's questioning of the SANE regarding her report "opened the door" to these allegations and left a false impression with the jury that the defense was hiding evidence. We disagree. The questioning and testimony Castillo references in his brief that he argues "opened the door" involved the State asking him about S.M.'s statements to a forensic interviewer, not the SANE. The context of the State's questions show that Castillo was asked whether he had any reason to believe that S.M. provided the forensic

17

interviewer with any discrepancies regarding how this assault occurred. *See Prescott*, 744 S.W.2d at 131 (explaining that when determining meaning of a response, the predicate question is a "determinative interpretative tool[]"). We overrule these issues.

## V. Conclusion

Having determined that the trial court did not err by excluding the complained-of evidence or limiting cross-examination, we affirm the judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on September 22, 2021
Opinion Delivered December 15, 2021
Do Not Publish

Before Golemon, C.J., Kreger and Johnson, JJ.